ARACHNID, INC., *et al.*, Plaintiffs and Counterdefendants-Appellees, v. PAUL F. BEALL, Defendant and Counterplaintiff-Appellant (TBI Games Unlimited, Inc., Plaintiff).

Second District   No. 2—90—0868

Opinion filed April 3, 1991.

Edward J. Enichen and G. Michael Scheurich, both of Guyer & Enichen, and Thomas D. Luchetti, both of Rockford, for appellant.

Scott C. Sullivan, of Williams & McCarthy, of Rockford, and Joel T. Pelz, of Jenner & Block, of Chicago, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Paul F. Beall, appeals from the trial court's order entered April 24, 1990, dismissing certain counts of his counterclaim against plaintiffs, Arachnid, Inc. (Arachnid), Stephen M. Tillery and Michael L. Tillery (Tillerys). Defendant states that the appeal is taken pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), the trial court having declared its order of dismissal final as to fewer than all the claims set forth in the counterclaim and having stated that there was no just reason for delaying the appeal therefrom. Notwithstanding the trial court's declaration, we find that the order of dismissal does not meet the jurisdictional requirements of finality and appealability. We therefore dismiss defendant's appeal as premature.

Defendant and the Tillerys were stockholders in certain related and closely held corporations. On December 8, 1986, defendant and the Tillerys executed three agreements: "Arachnid Corporations

Stock Restriction and Purchase Agreement" (Purchase Agreement), "Arachnid Corporations Stock Restriction and Purchase Agreement Regarding Stephen M. Tillery," and an "Employment Agreement." These agreements had an effective date of January 1, 1987. The Purchase Agreement provided a specified method by which one of the parties could either purchase or sell his stock to the other. The Employment Agreement was executed by defendant and by Arachnid through its vice-president, Michael Tillery. The Employment Agreement defined defendant's employment as president of Arachnid.

The record reveals that on or about January 27, 1989, by means of a notice to Michael L. Tillery, defendant triggered the buy-sell provisions of the Purchase Agreement. In accordance with those provisions, Michael Tillery agreed to purchase defendant's stock. The closing date of the purchase was to be within 60 days of the date of notice of the decision to purchase (February 24, 1989) or on a date mutually agreed upon. During this interim period until the closing date, defendant remained as president.

On April 7, 1989, plaintiffs, Arachnid, TBI Games, and the Tillerys, filed an emergency motion for a temporary restraining order along with a verified complaint alleging that defendant was taking certain actions detrimental to Arachnid and to the other shareholders. Count I of the complaint for injunctive relief averred, *inter alia*, that, to the detriment of plaintiffs, defendant removed the corporate checkbooks and checkwriting machine from Arachnid's offices, that he changed the authorized signatures of two corporate bank accounts so that his was the only authorized signature, that he terminated the employment of the purchasing agent, and that he paid himself a dividend of $288,000 without the approval of the board of directors. Plaintiffs sought to restrain defendant from taking certain enumerated actions in the conduct of corporate affairs without the consent of Michael Tillery and also sought to maintain the status quo until the rights of the parties could be determined. Count II sought a declaratory judgment to establish the rights of the parties during and after the closing and specifically prayed for a finding that Michael and Stephen Tillery had the right to operate the businesses during the period prior to closing.

In a temporary restraining order dated April 7, 1989, the trial court enjoined defendant from certain conduct involving the affairs of the corporations without the express consent of Michael Tillery and directed defendant to take certain specific actions with respect to the financial management of the corporations. Plaintiffs' motion for a preliminary injunction was set for hearing on April 17, 1989. On that same date, defendant sold his shares of stock in Arachnid and its re-

lated corporations to Michael Tillery and, pursuant to paragraph 21 of the Purchase Agreement, also resigned his position from all offices which he held. Nevertheless, by letter dated April 17, 1989, addressed to Michael Tillery as president, defendant asserted that he still considered himself an employee of Arachnid under the terms of the Employment Agreement.

On August 25, 1989, defendant filed his answer to the original complaint and also filed a four-count counterclaim. Count I of the counterclaim sought a declaratory judgment to establish the rights of the parties under the Purchase Agreement and the Employment Agreement. Defendant specifically asked the court to declare that the two agreements were separate undertakings, that Arachnid honor the provisions of the Employment Agreement, that the $288,000 distribution was valid, and that defendant be awarded the unpaid salary and accrued benefits due to him under the Employment Agreement.

Count II incorporated the allegations of the first 14 paragraphs of count I and sought damages against the Tillerys for their alleged tortious interference with defendant's employment contract with Arachnid.

Count III of the counterclaim incorporated the first 14 paragraphs of count I and sought to establish (contrary to the accusations of the Tillerys individually and on behalf of Arachnid that defendant had engaged in misconduct) that defendant had performed his duties faithfully as president. In this count, defendant sought a declaration that neither Arachnid nor the Tillerys had any claims against defendant related to his prior conduct as president.

Count IV of the counterclaim was based in replevin and sought damages from the Tillerys for their alleged conversion of defendant's personal property.

On September 28, 1989, Arachnid and the Tillerys moved to strike and dismiss all counts of the counterclaim. These plaintiffs argued that counts I and III for declaratory judgment improperly sought a declaration of nonliability for past conduct, and they argued that such a remedy should not supersede or preempt plaintiffs' right to obtain relief under other well-recognized remedies or causes of action arising from the contract of employment. Regarding count II (tortious interference), these plaintiffs argued that the Tillerys, as shareholders and directors, were conditionally privileged to take action with respect to defendant's employment agreement with Arachnid and that defendant's allegations in count II were insufficient in pleading the element of the Tillerys' lack of justification in inducing a breach of the employment contract. With respect to count IV, plain-

tiffs contended that none of defendant's property was being wrongfully detained at defendant's former office at Arachnid.

In response, defendant argued that, at least with respect to count I, he was properly seeking a declaration of his rights under the Employment Agreement. Defendant's response does not seem to address the issues raised with respect to count III. As to count II, defendant conceded that shareholders and directors were conditionally privileged to interfere with the contracts of the corporation. Nevertheless, defendant maintained that his allegation was sufficient in stating that the Tillerys, with knowledge of a valid agreement between defendant and Arachnid, "intentionally and unjustifiably induced the breach of that agreement." Citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, defendant asserted that, as a requisite element of the tort of intentional interference with a contract, "malice" meant only the intent to interfere without sufficient justification. Defendant did not respond to plaintiffs' argument concerning count IV of the counterclaim.

On April 24, 1990, the trial court granted the motion to dismiss counts I, II, and III, but excepted those claims in count I which had accrued through April 17, 1989, under the Employment Agreement. Count IV was allowed to stand. In its order, the court explained that both the Purchase Agreement and the Employment Agreement together defined defendant's contractual relationship with the other parties. The court noted that it was defendant who, on January 27, 1989, initiated the proceeding by which he was divested of all his stock in Arachnid and that this necessarily resulted in his resignation on April 17, 1989, which thereby terminated his employment as president of Arachnid. The court opined that defendant should not be heard to complain of the termination for which he was responsible and which he should have expected to occur. The language of the order also implied that the only properly justiciable issues remaining were those that had survived the motion to dismiss and those that had been placed in issue by his answer to the complaint.

On July 6, 1990, in response to defendant's request for findings pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), the trial court entered an order finding that its prior order of April 24, 1990, was "a final judgment as to the various causes of action set forth therein" and was "final as to fewer than all the claims set forth in the Counterclaim; there being no just reason for delaying appeal therefrom, the Court so orders." The order noted (erroneously, we believe) that count I had been dismissed. The order of April 24 actually

left standing certain claims under count I which had accrued prior to April 17, 1989.

■■ As this appeal taken pursuant to Supreme Court Rule 304(a) presents procedural difficulties affecting jurisdiction, we will closely examine the basis of our jurisdiction, and we will dismiss the appeal if we lack jurisdiction. (See *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440.) The determination of whether this court has jurisdiction to entertain an appeal from a judgment which does not dispose of the entire proceeding initially turns on whether there has been compliance with Rule 304(a), that is, whether the trial court has made an *express* "written finding that there is no just reason for delaying enforcement or appeal" (134 Ill. 2d R. 304(a); *Lurz v. Panek* (1988), 166 Ill. App. 3d 179, 181). Absent such an express finding, a judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable. (*Ferguson*, 111 Ill. 2d at 442.) The purpose of this seemingly harsh rule is to discourage piecemeal appeals (*First National Bank v. Lewis* (1987), 163 Ill. App. 3d 160, 161), and we believe the rule is particularly applicable to the case at bar.

■■ Supreme Court Rule 304(a) requires a trial court to make a two-pronged written finding that there is no just reason for delaying (1) enforcement or (2) appeal. Our review of prior decisions on this subject persuades us that, for a trial court's finding under Rule 304(a) to confer jurisdiction to a reviewing court, the finding must address both prongs: enforceability and appealability; moreover, the finding must also track the language expressly stated in the rule. (See, *e.g., Lurz*, 166 Ill. App. 3d at 182 (absence of the enforcement language in the trial court's statement contravened requirements of Rule 304(a)); *Lewis*, 163 Ill. App. 3d at 162 (failure of trial court to include language of appealability rendered order neither final nor appealable); *Rauscher v. Albert* (1985), 138 Ill. App. 3d 799, 803-04 (finding must address both prongs of enforceability and appealability to confer appellate jurisdiction, and failure to mention appealability in express written finding rendered finding jurisdictionally deficient). But *cf. Lawyers Title Insurance Corp. v. Kneller* (1988), 172 Ill. App. 3d 210, 212-13 (without citation to authority, the majority determined that the trial court's mere reference to Rule 304(a) without stating the language of the rule itself constructively fulfilled the technical language requirement; a vigorous dissent by Justice Barry advocated a strict construction of the rule); *Kucharski v. Floro* (1989), 191 Ill. App. 3d 1032, 1033 (mere citation to Rule 304(a) without reciting exact language of the rule was sufficient to render order final and appealable).)

We agree with the rationale in Justice Barry's dissent (*Kneller*, 172 Ill. App. 3d at 215-17 (Barry, J., dissenting)) that the supreme court's rules of appellate jurisdiction must be followed strictly. The language of Supreme Court Rule 304(a) is mandatory and precise, and the rule is not unduly burdensome to follow. We decline to follow the recent trend of decisions applying a liberal construction of the rule as has been done, for example, in *Kneller* and *Floro*.

■■ In the present case, although defendant moved for a finding pursuant to Rule 304(a), the trial court only found that its order was final and that there was no just reason for delaying the appeal. There was no language with respect to enforceability. Accordingly, we do not consider the order final and appealable, and we must dismiss the appeal for want of jurisdiction. See *Lurz*, 166 Ill. App. 3d at 182.

■■ ■ We also point out that there is an additional reason why we do not have jurisdiction to hear this appeal. While Supreme Court Rule 304(a) permits appeals from orders that do not dispose of the entire controversy if there is the required finding described above, the fact that an order contains the required language does not make an otherwise nonfinal order appealable. (*Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.* (1990), 197 Ill. App. 3d 948, 951.) An order is considered final if it disposes of the rights of the parties either with respect to the entire controversy or some definite and separate portion thereof. (*Hull v. City of Chicago* (1987), 165 Ill. App. 3d 732, 733.) It is well established that the statement of a single claim in several ways, even by multiple counts, does not warrant a separate appeal. (*Brown v. K.J.S. Co.* (1989), 189 Ill. App. 3d 768, 770-71.) Generally, the controlling factor in determining whether an order appealed under Rule 304(a) is a final order is whether the bases for recovery under the counts that were dismissed are different from those under the counts left standing. *Carl Sandburg*, 197 Ill. App. 3d at 951-52.

■■ ■ With respect to counts I and III, defendant's counterclaim, although stated in more than one count but stemming from the same operative facts, is premised on a theory of breach of contract, and defendant was seeking a declaration of his rights under two interrelated contracts. The trial court struck only a portion of defendant's claim in count I. This partial adjudication of the rights of the parties stemming from their contractual relationship could not form the basis of a final order as to a separate branch of the controversy. The order of April 24, 1990, striking only a portion of count I and all of count III did not fully dispose of that part of defendant's counterclaim sounding in contract. Under these circumstances, the order cannot be

considered final. (See, *e.g., Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376, 381; see also *Cashmore v. Builders Square, Inc.* (1990), 207 Ill. App. 3d 267, 271.) Additionally, count II, which alleged tortious interference with contractual rights, necessarily depends for its resolution on the trial court's findings with respect to the existence of a valid and enforceable employment contract and a determination of the parties respective rights thereunder. Here, defendant's basis of recovery in count II is inextricably intertwined with the contract action and, based on the facts of this case, cannot be resolved at this stage of the proceedings as an independent or separate branch of the controversy. We conclude that a finding under Rule 304(a) with respect to counts I, II, and III was premature.

Finally, even assuming *arguendo* that count II could stand alone because it sounds in tort, we would be forced to conclude that this count was not pleaded with the specificity required by our supreme court in *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 159. Because a conditional privilege had been interposed as a defense by the plaintiff shareholders and officers, defendant, in his counterclaim, was required to allege more than that the Tillerys "intentionally and unjustifiably" induced a breach of the employment contract. Such conclusory statements without supporting factual allegations are clearly insufficient to state a cause of action for intentional interference with contractual rights. (*HPI,* 131 Ill. 2d at 159.) Defendant was required to allege specifically how the breach was unjustified.

For the foregoing reasons, the appeal is dismissed.

Appeal dismissed.

WOODWARD and UNVERZAGT, JJ., concur.