**SIXTH DIVISION**
January 21, 2011

No. 1-09-2785

| | | |
|---|---|---|
| *In re* ESTATE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| VICTORIA M. PAWLINSKI, | ) | Cook County, |
| | ) | |
| Deceased | ) | |
| | ) | |
| (Margaret T. Calvert, and | ) | |
| Edward J. Pawlinski, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 04 P 008095 |
| | ) | |
| Sidmund J. Pawlinski | ) | The Honorable |
| | ) | Jeffrey A. Malak, |
| Defendant-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justices Cahill and McBride concurred in the judgment and opinion.

## OPINION

The decedent, Victoria M. Pawlinski, is survived by three children, appellant Sidmund J. Pawlinski (Sid) and appellees Edward Pawlinski (Ed) and Margaret Pawlinski Calvert. Sid, as executor of Victoria's will, filed a final account of the estate's assets for distribution amongst the three heirs. The final account did not include a number of bank certificates of deposit (CDs), worth over $500,000 combined and each titled jointly to Sid and Victoria. Ed and Margaret challenged the

omissions in a citation to recover the CDs. Following an evidentiary hearing, Judge Jeffery A. Malak ordered the CDs be included in the assets of the estate. The CDs were retitled to Sid and Victoria as joint tenants after a grant of power of attorney by Victoria to Sid. Judge Malak found Sid failed to overcome the presumption of undue influence by clear and convincing evidence. Sid contends Judge Malak erred in his application of the presumption of undue influence in light of the evidence presented, in his failure to find that Ed and Margaret "conceded" that Sid met his burden of overcoming the presumption of undue influence when Ed and Margaret introduced rebuttal evidence, and in his rejection of Sid's motion to reopen the proofs. We find Judge Malak properly applied the strong presumption of undue influence, favored by Illinois courts, against a fiduciary and his ruling at the conclusion of the evidentiary hearing is not against the manifest weight of the evidence. Because Sid's motion to reopen the proofs was filed on the same day as the notice of appeal and was not ruled upon until several months thereafter, the propriety of that ruling is not properly before us. We affirm in part and dismiss in part.

BACKGROUND

Victoria Pawlinski died on August 24, 2004, survived by her three children, Sid, Ed, and Margaret. Victoria moved to Sid's home in early February 2002 following the death of her husband, Sidmund Pawlinski, Sr. (Sid Sr.), on January 31, 2002. At the

time of Sid Sr.'s death, both he and Victoria were residing in a nursing home. While a resident of the nursing home, Victoria granted Sid power of attorney on February 1, 2002. Victoria resided with Sid until her death on August 24, 2004.

Victoria's will was admitted to probate on December 3, 2004, and, in accordance with its terms, Sid was appointed executor of her estate. The will stated Vitoria's intention "to provide for all [her] children." The will provided that the tangible personal property and all remaining property Victoria owned at the time of her death pass to the trustee of the "Victoria M. Pawlinski Trust [Pawlinski Trust] dated May 31, 2002." However, the parties were unable to locate the Pawlinski Trust document by the time of the hearing. Following the entry of the order declaring the three children sole heirs of Victoria, Sid filed a first and final account of the assets of the estate for equal distribution amongst Sid, Ed, and Margaret.

On July 7, 2006, Ed and Margaret filed a citation to discover assets of the estate alleging Sid possessed and withheld from the estate CDs with multiple banks worth over $500,000. Upon review of the citation, Judge Malak converted it to a citation to recover assets, which he issued on October 18, 2006. Judge Malak also granted Ed and Margaret's motion for partial summary judgment, finding that a fiduciary relationship existed between Sid and Victoria from February 1, 2002, when she appointed Sid as her attorney-in-fact, until her death. The

3

1-09-2785

existence of a fiduciary relationship gave rise to a presumption that any transaction executed by Victoria for Sid's benefit during that period was fraudulent as a product of undue influence. Judge Malak noted that the presumption could only be overcome by clear and convincing evidence. Beginning in April and concluding in June 2009, Judge Malak conducted an evidentiary hearing on the citation to recover assets to determine whether the CDs should be included as assets of the estate. We set out the testimony of only those witnesses that impact the issue on appeal.

Attorney Arthur Douglas Wellman testified he had represented Sid in various matters for the previous 15 years. In January 2002, Sid contacted him regarding his parents, both of whom were ill and living in a nursing home. Attorney Wellman met with Sid Sr., who stated his wish to grant Sid power of attorney over the assets he held jointly with Victoria. Before a power of attorney could be executed, Sid Sr. passed away on January 31, 2002. Attorney Wellman then met with Victoria in the nursing home on February 1, 2002. She granted power of attorney to Sid that same day and indicated to attorney Wellman that she "entrusted [Sid] implicitly." Sid was present when Victoria signed the power of attorney, accepted the appointment as Victoria's attorney-in-fact and agreed to "perform in said fiduciary capacity consistent with [Victoria's] best interests."

Attorney Wellman met with Victoria again later in February

4

2002 at Sid's home. According to attorney Wellman, the two met alone in a bedroom. Victoria revealed that her estate was worth over $1 million. Attorney Wellman encouraged Victoria to have financial representatives meet with her in the home to discuss how she could get the highest rate of return on her money. Victoria informed attorney Wellman that both she and her husband wanted Sid to help them with their financial affairs and that the bulk of her bank accounts and CDs should go to him upon her death. They discussed retitling some of her accounts jointly with Sid.

Attorney Wellman testified he prepared a will for Victoria, which was designed to pour the majority of her assets into an irrevocable trust he also prepared. The assets placed into the trust would go to Sid, Sid's wife, and Sid's son; any assets not placed in the trust would be distributed equally amongst Sid, Ed, and Margaret. To challenge the existence of a pourover trust, Ed and Margaret's attorney introduced into evidence a letter from attorney Wellman dated April 5, 2005, which stated, "There was no living trust or trust of any kind executed or in existence at the time of [Victoria's] death to [my] knowledge or in my possession." No pourover trust was ever introduced at the citation hearing.

Sid testified that he never discussed the power of attorney with attorney Wellman and that it was his parents' wish that he hold power of attorney over their assets. Under the power of

attorney, Sid paid bills for his mother through a checking account his mother opened listing Sid as a joint tenant. He also added his name as joint tenant with Victoria to CDs at three different banks that had been previously titled to Victoria and Sid Sr. Sid denied participating in any of the meetings between attorney Wellman and Victoria, although he was aware attorney Wellman was preparing her will.

Sid testified that sometime in early March 2002, at Victoria's request, he arranged for representatives from LaSalle Bank to come to his house to speak with Victoria. According to Sid, he remained in the kitchen having coffee while the two LaSalle Bank representatives met with Victoria in the dining room. Shortly after this meeting, Sid went to LaSalle Bank by himself to conduct business on his mother's behalf concerning three CDs, which, at the time, were titled jointly to Victoria and Sid Sr. Sid testified that "whatever my mother had told them to do at the house, that's what was done with the CDs." While Sid was at the bank, the three CD accounts were consolidated into a single $88,000 CD titled to Victoria and Sid as joint tenants, with a right of survivorship, on the authority granted by the power of attorney.

Sid also visited TCF Bank in late March 2002 where Victoria and Sid Sr., as joint tenants, held a CD worth $100,000. Sid arranged for a TCF representative to meet with Victoria at his house. Sid testified that when the TCF representative arrived,

Sid introduced his mother and left the room. He "went about [his] business" while the TCF representative and Victoria talked alone. Sid denied discussing any changes to the TCF CD with Victoria. A TCF CD with the same account number and balance as the CD titled jointly to Victoria and Sid Sr. was introduced into evidence. This TCF CD listed Victoria and Sid as joint tenants. Sid explained the TCF CD was merely a renewal of the CD he secured from a TCF banker on August 6, 2004, under the authority of the power of attorney given by Victoria.

Additionally, Sid testified that in March 2002 he contacted Lawrence Knight, a manager of MB Financial Bank, to arrange a home visit with Victoria regarding some accounts she had at MB. At the time, Victoria had three CDs at MB: two with a combined worth of $85,000 and one worth $94,000, all of which were jointly titled to Victoria and Sid Sr. According to Sid's testimony, when Knight arrived at Sid's home, Sid introduced Knight to his mother and left the room while the two discussed her MB accounts. The MB CDs were later retitled jointly to Victoria and Sid. Sid testified that the changes occurred after Victoria met with Knight at the house, but he could not recall whether he appeared personally at MB Financial Bank to complete the retitling of the CDs.

The parties stipulated to the introduction of the evidence deposition, conducted by telephone, of Knight, who at the time of the hearing resided in Colorado and was no longer employed at MB

7

Financial Bank. In his deposition, Knight confirmed that Sid came to the branch office to arrange a meeting with Victoria at Sid's home concerning the MB CDs. Knight traveled to the home alone, where he met with Victoria, Sid, and Sid's wife. Knight testified that Sid and his wife were present throughout the meeting with Victoria, but could not recall whether anyone other than he and Victoria sat at the table during their meeting. When asked whether Sid and his wife spoke up during the meeting, Knight testified he was "sure they did" because Sid "was in the room, so I'm sure that he *** joined in the conversation." Knight testified that he believed Victoria was capable of making decisions about the account and that it was her desire to change the CDs to allow Sid to receive the money upon her death. Knight testified that he arrived at Sid's home with the forms necessary to retitle the MB CDs in Victoria and Sid's names, which he prepared in advance of the meeting. The only person with whom Knight discussed the CDs before meeting with Victoria was Sid. He could not recall, however, the specific conversations he must have had with Sid about the changes to the MB CDs reflected in the forms he brought to the home.

Near the close of the hearing, the parties discussed stipulating to Ed and Margaret's rebuttal evidence, which consisted of signature cards and other documents subpoenaed from the banks holding the CDs. Sid's counsel argued that while he had the initial burden to overcome any presumption of undue

influence, if Ed and Margaret introduced rebuttal evidence "they may be conceding that [Sid had] overcome [that] burden." Judge Malak acknowledged the "possibility" that the introduction of rebuttal evidence might constitute such a concession. Ed and Margaret introduced the rebuttal evidence, recalling Sid to provide the foundation to introduce the rebuttal documents into evidence. Following the close of evidence, Sid's counsel argued that "at the point [Ed and Margaret] put rebuttal evidence on, I think they acknowledged by those actions that we had satisfied our burden."

On July 14, 2009, Judge Malak entered an order finding the contested CDs to be assets of the estate. In his decision, Judge Malak noted that Knight's testimony was the only evidence presented by a noninterested party. Relying primarily on the substance of Knight's testimony, Judge Malak concluded that "the presumption of undue influence has [not] been overcome by clear and convincing evidence." Judge Malak's order made no mention of Sid's contention that the introduction of rebuttal evidence by Ed and Margaret was a concession that Sid had overcome the presumption of undue influence. Sid's motion for reconsideration filed on August 13, 2009, was denied by Judge Malak on September 15, 2009. On October 15, 2009, Sid filed the notice of appeal, triggering this court's jurisdiction. On the same day, Sid filed in the circuit court a motion to reopen the proofs to admit a copy of the purported trust agreement referenced in Victoria's

9

1-09-2785

will, which the motion alleged was discovered on October 3, 2009. The record before us includes Judge Malak's order of February 10, 2010, denying the motion.

ANALYSIS

Before addressing the merits of this appeal, we consider the threshold issue of jurisdiction. See *Mund v. Brown*, 393 Ill. App. 3d 994, 996, 913 N.E.2d 1225 (2009), (" '[T]he appellate court has *** [a] duty to consider its jurisdiction before proceeding to the merits of the case.' ") (quoting *Almgren v. Rush-Presbyterian-St. Lukes Medical Center,* 162 Ill.2d 205, 210, 642 N.E.2d 1225 (1994)). In their responsive brief, Ed and Margaret contend that the orders from which this appeal is taken are not final and appealable, noting that the estate remains open in probate court. In his reply brief, Sid responds that the orders resolved the parties' property rights regarding the CDs, making the orders final and appealable.

Jurisdiction

"A final order is one that 'disposes of the rights of the parties either with respect to the entire controversy or some definite and separate portion thereof.' " *In re Estate of Yucis*, 382 Ill. App. 3d 1062, 1069, 890 N.E.2d 964 (2008) (quoting *Arachnid, Inc. v. Beall*, 210 Ill. App. 3d 1096, 1103, 569 N.E.2d 1273 (1991)). While generally an appeal can only be taken from a judgment as to fewer than all claims "if the trial court has made an express written finding that there is no just reason for

10

delaying either enforcement or appeal or both" (Ill. S. Ct. R. 304(a) (eff. Jan 1, 2006)), no such finding is required to appeal from an order "entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party" (Ill. S. Ct. R. 304(b)(1) (eff. Jan 1, 2006)).  This court has noted in the past that "[o]rders within the scope of Rule 304(b)(1), even though entered before the final settlement of estate proceedings, must be appealed within 30 days of entry or be barred." *Stephen v. Huckaba*, 361 Ill. App. 3d 1047, 1051, 838 N.E.2d 347 (2005).

Guided by the principles of finality set out above, we find Ed and Margaret's lack-of-jurisdiction claim unavailing.  The order of July 14, 2009, settled the parties' rights to the CDs at issue.  Whether the CDs were assets of the estate constituted a " 'definite and separate portion' " of the controversy between the parties. *Estate of Yucis*, 382 Ill. App. 3d at 1069 (quoting *Arachnid, Inc.*, 210 Ill. App. 3d at 1103).  The estate was opened in 2004; the converted petition to recover assets was filed in 2006; the hearing was held in 2009.  " 'A central reason behind making the time for appeal of such orders mandatory, and not optional, is that certainty as to some issues is a necessity during the lengthy procedure of estate administration.' " *Stephen*, 361 Ill. App. 3d at 1051 (quoting *In re Estate of Kime*, 95 Ill. App. 3d 262, 268, 419 N.E.2d 1246 (1981)).  Rather than call into question the finality of the order of July 14, 2009,

11

the rule regarding appeals in the administration of estates made the appeal of the order within 30 days of its entry mandatory. "Orders within the scope of Rule 304(b)(1), even though entered before the final settlement of estate proceedings, must be appealed within 30 days of entry or be barred." *Stephen*, 361 Ill. App. 3d at 1051. We have jurisdiction to decide this appeal.

### Presumption of Undue Influence

We turn to the first substantive issue Sid raises in this appeal. He contends the circuit court erred in its application of the presumption of undue influence, which each side agrees applies to the retitling of the CDs to Victoria and Sid as joint tenants. Sid argues the circuit court, in actuality, imposed upon him the burden of persuasion that no undue influence occurred, a burden that legally rested with Ed and Margaret.

Ed and Margaret argue the circuit court properly applied Illinois law regarding the presumption of undue influence raised by a fiduciary relationship. Namely, the burden fell on Sid in his fiduciary capacity to rebut by clear and convincing evidence that the retitling of the CDs to Victoria and Sid was not the product of undue influence and that he failed to meet this burden.

### *Standard of Review*

Sid acknowledges in his main brief that "Generally speaking, a trial court's ruling on a Citation in a probate matter would be

12

1-09-2785

subject to review pursuant to the manifest weight of the evidence standard." He contends, however, premised on his contention that the burden of persuasion was shifted from Ed and Margaret, that the trial court committed an error of law, which we review *de novo*. He contends this error of law extended to the trial court's ruling "when it concluded, based upon purportedly contradictory testimony, that the presumption of undue influence had not been overcome by Sid."

Ed and Margaret agree that if the only issue presented was whether the burden of persuasion had been shifted, that question is one of law. They contend, however, the real question before us concerns an evidentiary finding the circuit court made after it "properly considered and weighed the evidence produced by the parties." Such a ruling is subject to the manifest weight of the evidence standard.

We agree with Sid that whether the burden of persuasion was shifted raises a question of law. We do not agree, however, that the record provides any support that the burden of persuasion was shifted to Sid. Nor does Sid attempt to persuade us that this is so. Rather, Sid asserts this claim as a basis to explain the trial judge's ruling. However, the ruling was very clear: "the Court may not say that the presumption of undue influence has been overcome by clear and convincing evidence."

We agree with Ed and Margaret that the trial judge, as trier of fact, "considered and weighed the evidence produced by the

13

parties" to decide questions of fact. As our supreme court has held, such factual findings are reviewed against the manifest weight of the evidence. "The only issue raised in this appeal is whether the trial court's finding [that the evidence was not sufficient to overcome the strong presumption of undue influence] was contrary to the manifest weight of the evidence." *Klaskin v. Klepak*, 126 Ill. 2d 376, 389, 534 N.E.2d 971 (1989); *In re Estate of Miller*, 334 Ill. App. 3d 692, 699, 778 N.E.2d 262 (2002) (trial court found the evidence insufficient to overcome the strong presumption of undue influence, a finding an appellate court will reverse only if it is against the manifest weight of the evidence (citing *Klaskin*, 126 Ill. 2d at 389)).

### *Clear and Convincing Evidence*

Sid acknowledges that this case turns on whether he met his burden "to rebut the presumption by clear and convincing proof that the [contested] transaction[s] [were] fair and equitable and did not result from undue influence." While repeating the correct standard, Sid appears to lessen his burden.

> "Thus, to the extent that the Circuit Court's conclusion that the presumption of undue influence was not overcome by clear and convincing evidence amounts to a statement by the Circuit Court that it was not persuaded by SID's evidence, then the Circuit Court erred as a matter of law. By *producing*

14

> *evidence* which could disprove that there was
> undue influence, SID rebutted the presumption
> of fraud such that the Circuit Court should
> have weighed the evidence to determine
> whether EDWARD and MARGARET satisfied their
> burden of proving undue influence."
> (Emphasis added.)

As we set out above, the case law is to the contrary.  The trial judge's decision on whether the legal presumption has been met is entitled to deference as reflected by the manifest weight of the evidence standard.  *Klaskin*, 126 Ill. 2d at 389; *Estate of Miller*, 334 Ill. App. 3d at 699.

Sid's reliance on *Franciscan Sisters* that his "producing [some] evidence which could disprove that there was undue influence" burst the presumption bubble is misplaced.  *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 448 N.E.2d 872 (1983).  In *Franciscan Sisters*, the defendant lawyer both drafted the will and was to benefit under the will, which gave rise to a legal presumption of undue influence.  Before the appellate court, the defendant lawyer claimed "that the trial court had misunderstood the effect of the presumption."  *Franciscan Sisters*, 95 Ill. 2d at 456.  The appellate court set out the misunderstanding in the trial court's own words: " 'In making this finding, the Court, as fact finder, realizes the evidence would not have been sufficient to upset the will if the

15

presumption was not in existence.' " *Franciscan Sisters Health Care Corp. v. Dean*, 102 Ill. App. 3d 61, 67, 429 N.E.2d 914 (1981).

Whether the legacy was the product of undue influence turned on the testator's "state of mind on *** the day that she signed the will." *Franciscan Sisters*, 95 Ill. 2d at 465. The only direct evidence offered as to the testator's state of mind on the day she signed the will was by witnesses on behalf of the defendant lawyer. The appellate court majority found the granting of the legacy was an independent act on the part of the testator, as the witnesses to the signing of the will testified, which satisfied the clear and convincing standard so as to burst the legal presumption bubble. Thus, the circuit court was mistaken in its belief that the presumption remained after sufficient evidence was presented that no undue influence was at work in the drafting of the will. The supreme court agreed. "Our decision here affirms the appellate court, which held that after the presumption is rebutted as a matter of law 'what remains is a factual question, and we remand the cause to the trial judge as trier of fact to assess the strength of the evidence.' (102 Ill. App. 3d 61, 70)" *Franciscan Sisters*, 95 Ill. 2d at 466. The presumption, having burst by a showing of clear and convincing evidence, could no longer be relied upon in assessing the evidence. *Franciscan Sisters*, 95 Ill. 2d at 466.

Here, the trial judge made no statement similar to that of

the trial judge in *Franciscan Sisters*. Rather, the trial judge here understood that the amount of evidence Sid was required to present to meet the presumption varied with the strength of the facts supporting the presumption, as the supreme court made clear in *Franciscan Sisters*. "If a strong presumption arises, the weight of the evidence brought in to rebut it must be great." *Franciscan Sisters*, 95 Ill. 2d at 463. The term "clear and convincing" is a relative term. "The amount of evidence that is required from an adversary to meet the presumption is not determined by any fixed rule. A party may simply have to respond with *some evidence* or may have to respond with *substantial evidence*. If a strong presumption arises, the weight of the evidence brought in to rebut must be great." (Emphasis added.) *Franciscan Sisters*, 95 Ill. 2d at 463.

While "some evidence" may theoretically be sufficient to rebut the legal presumption of undue influence, we see no benefit to the use of the term "some evidence" or "producing evidence" as Sid asserts. The "clear and convincing" quantum of evidence needed to overcome the presumption of undue influence has been adopted as the standard generally applicable to fiduciary relationships, not confined to the context of an attorney-client relationship. See *In re Estate of Wessels*, 203 Ill. App. 3d 1080, 1087, 561 N.E.2d 1212 (1990) ("clear and convincing evidence is required to rebut the presumption of fraud or undue influence arising from transactions within any fiduciary

17

relationship, not just those involving attorneys and their clients") (citing *Lamb v. Lamb*, 124 Ill. App. 3d 687, 464 N.E.2d 873 (1984)).

It is the strength of the presumption that arose in this case that distinguishes it from *Franciscan Sisters*. Here, the evidence went far beyond the mere signing of the power of attorney by Victoria to Sid. The circuit court set forth the critical circumstances regarding the signing of the power of attorney by Victoria and the retitling of the CDs held at three different banks with Victoria and Sid as joint tenants, which demonstrated the strength of the showing supporting the presumption.

The circuit court characterized the signing of the power of attorney as "somewhat unusual." Victoria signed the power of attorney the day after Sid Sr. died, which suggests attorney Wellman and Sid met with Victoria at the nursing home with the power of attorney in hand. "The Power of Attorney form is clearly designated for Mrs. Victoria Pawlinski, but there is no indication that she requested it." The circuit court noted that at times Sid claimed "he did not use the Power of Attorney to make any change[s] [to the CDs.]" At other times, Sid "testified that he 'may have' used the Power of Attorney to change a certificate and that he 'might have' become a joint tenant thereof."

Because much of the evidence presented by the parties came

18

from the parties themselves or witnesses that were closely aligned to one side or the other, the trial judge singled out the testimony of Lawrence Knight, the then acting branch manager of MB Financial Bank, as a "totally noninterested" witness. The trial judge found Knight contradicted Sid in "two major areas."

Sid claimed neither he nor his wife was present during the meeting between Knight and Victoria. The circuit court found the contrary to be true: "Mr. Knight testified that they were not only present, but spoke during the meeting." Sid also claimed that he merely arranged to have representatives of the three banks meet with Victoria at his home to discuss her assets and, as the circuit court found, "he did not discuss the particulars of the certificates or his mother's desires [regarding changing the titles to the CDs] with any of the bankers." As to the CDs held by MB Bank, Sid was asked, "Did you and [Knight] go through the accounts that [Victoria] had on deposit at MB Bank at that time?" He answered, "No." Sid claimed, "I just explained to [Knight] my situation was my mother wasn't mobile enough and that she needed someone to come and speak with her about her assets." Knight, however, arrived at Sid's home with forms necessary to add Sid's name to the CDs held by MB Financial Bank. Knight spoke only to Sid regarding Victoria's CDs before making the trip to meet with Victoria. A strong inference arises from Knight's testimony that Sid anticipated the use of those forms at Knight's meeting with Victoria and requested that Knight come prepared.

19

1-09-2785

The circuit court also pointed out that Sid failed to come forward with any witnesses that might shed light on the discussions he had with representatives of the other two banks. Knight was the only bank official that testified, though Sid testified that two LaSalle Bank representatives visited with Victoria at his home. "[T]he Court has no information as to what transpired at the [other banks] and who was present at any discussion at the respondent's home during the discussions with Victoria." It is fair to infer that the circuit court considered the absence of such evidence in assessing whether Sid met his burden of rebutting the strong showing of the presumption of undue influence.

In his main brief, Sid attempts to lessen the significance of the "two major areas" of conflict with Knight's testimony. "Noticeably absent from the record is testimony from Mr. Knight indicating that SID or his wife or anyone else participated in discussions specifically regarding the accounts. Furthermore, there is nothing in Mr. Knight's testimony which would indicate that SID was instructing Mr. Knight or VICTORIA about how the accounts should be retitled." Based on the record before us, however, the trial judge, as trier of fact, found little significance in the absence of direct testimony regarding the discussions Sid may have had with Knight concerning the retitling of the CDs. Because this case involves the strength of the showing supporting the presumption of undue influence, that no

20

direct testimony of undue influence was elicited is of no benefit to Sid; it fell to Sid to affirmatively meet the strong presumption of undue influence with clear and convincing evidence of his own. *Franciscan Sisters*, 95 Ill. 2d at 463.

We find no basis to question the circuit court's assessment of the evidence. We agree that the evidence Sid presented failed to reach the clear and convincing threshold to rebut the strong presumption of undue influence. See *In re Estate of DeJarnette*, 286 Ill. App. 3d 1082, 1088, 677 N.E.2d 1024 (1997) ("Significant factors in meeting that burden [to rebut the presumption of undue influence] include a showing that the fiduciary made a frank disclosure of the information he had, he paid adequate consideration, and the principal had competent and independent advice."). The trial judge's finding against Sid is consistent with the manifest weight of the evidence.

Rebuttal Evidence

In his main brief, Sid contends Ed and Margaret's decision to introduce rebuttal evidence "waived the presumption of undue influence." To support this contention, Sid quotes the nature of rebuttal evidence from *Walters v. Yellow Cab Co.*, 273 Ill. App. 3d 729, 739-40, 653 N.E.2d 785 (1995) (rebuttal evidence is offered to "explain, repel, contradict, or disprove evidence presented by the defendant"). He argues that by offering rebuttal evidence, "EDWARD and MARGARET necessarily admitted that SID introduced evidence sufficient to meet his burden of

production."  We disagree.

While that explanation is a "possibility" as noted by the trial judge, it fell to the trial judge to decide whether Sid's evidence was "sufficient" to rebut the presumption of undue influence.  The trial judge ruled Sid's evidence was not.  As we ruled above, that finding is consistent with the manifest weight of the evidence.  Nor are we persuaded that the bank documents introduced by Ed and Margaret during rebuttal should somehow lessen Sid's burden when had the same evidence been introduced during Ed and Margaret's case in chief, Sid would be deprived of the argument he makes now.  Sid offers no authority for this novel proposition; nor will we provide him with one.

## Motion to Reopen

Finally, Sid argues the circuit court erred in denying his motion to reopen the proofs to admit a copy of a trust allegedly executed by Victoria and discovered on October 3, 2009.  The motion to reopen was filed on the same day Sid filed his notice of appeal.  The circuit court denied the motion several months later.  Sid argues that the circuit court abused its discretion in denying his motion.

We dismiss that portion of the appeal.  See *Estate of DeJarnette*, 286 Ill. App. 3d at 1091 (because "the trial court never ruled on the motion for sanctions," the appellate court held petitioners' claim seeking sanctions based on the citation proceedings was not properly before it).  As we indicated above,

a final settlement of the estate proceedings before us had not been entered by the time of this appeal. This appeal is limited to that " 'definite and separate portion' " of the controversy between the parties that settled the rights of the parties to the bank CDs. *Estate of Yucis*, 382 Ill. App. 3d at 1069 (quoting *Arachnid, Inc.*, 210 Ill. App. 3d at 1103).

## CONCLUSION

Because the CDs that are the subject of this appeal were retitled in Sid's favor after Victoria granted him power of attorney, a presumption of undue influence arose, which required Sid to produce clear and convincing evidence to rebut. A strong showing supporting the presumption of undue influence was made in the citation proceedings below. Consistent with the manifest weight of the evidence, the circuit court ruled that the presumption was not rebutted, even after Ed and Margaret chose to introduce limited rebuttal evidence. The bank CDs were assets of the estate. The issue regarding whether Sid's motion to reopen was correctly dismissed some months after the notice of appeal was filed is not properly before us.

Affirmed in part and dismissed in part.

**REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT**

---

IN RE ESTATE OF
VICTORIA M. PAWLINSKI,

Deceased

(Margaret T. Calvert, and Edward J. Pawlinski,

Plaintiffs-Appellees,

v.

Sidmund J. Pawlinski,

Defendant-Appellant).

---

**No. 1-09-2785**

Appellate Court of Illinois
First District, Sixth Division

Filed: January 21, 2011

---

**PRESIDING JUSTICE GARCIA delivered the opinion of the court.**

**CAHILL and MCBRIDE, JJ., concur.**

---

**Appeal from the Circuit Court of Cook County
Honorable Malak, Judge Presiding**

---

For DEFENDANT-APPELLANT     Goldstine, Skrodzki, Russian, Nemec and Hoff, Ltd.
William H. Hrabak, Jr.
Sara L. Spitler
835 McClintock Drive
Burr Ridge, IL 60527

For PLAINTIFF-APPELLEES     James F. Dunneback
Anne M. Scheurich
Jessica K. Thomas
James F. Dunneback, P.C.
9501 W. 144th Avenue, Suite 200
Orland Park, IL 60462