Rule 23 order filed
October 25, 2016;
Motion to publish granted
November 22, 2016.

2016 IL App (5th) 150564

NO. 5-15-0564

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF AGNES SPINNIE, a Disabled Adult | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| (Richard Ervin, Guardian of the Person and Estate of Agnes Spinnie, Petitioner-Appellee, v. Patricia A. Gooch, Respondent-Appellant). | ) ) ) ) ) | No. 13-P-273 Honorable Christopher T. Kolker, Judge, presiding. |

_____

PRESIDING JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Justices Cates and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, Richard Ervin, the guardian of the person and estate of Agnes Spinnie, brought this action against the respondent, Patricia A. Gooch, among others, to recover assets that the petitioner alleged were improperly acquired from Agnes. After hearing evidence, the circuit court entered judgment in favor of the petitioner and against the respondent in the amount of $31,733.19. For the following reasons, we reverse the circuit court's judgment.

¶ 2                              BACKGROUND

¶ 3    On July 5, 2007, Agnes, who was born on January 13, 1922, executed an Illinois Statutory Short Form Power of Attorney for Property, appointing the respondent as

1

attorney-in-fact. Agnes also executed a power of attorney for healthcare, naming the respondent as attorney-in-fact. At about the same time, Agnes received a substantial settlement in excess of $400,000, as compensation for her deceased husband's work-related injury. Thereafter, Agnes gifted funds to her daughters, the respondent and Helen Odell; her grandchildren, Shelley Brown, Lisa Brown, and Barbara Davis; and her great-grandchild, Morgan Brown, among others.

¶ 4 On May 29, 2013, the petitioner filed a petition for adjudication of disability and appointment of guardian for Agnes, along with a petition to terminate the respondent's agency under the power of attorney documents. On the same date, the court appointed a guardian *ad litem* for Agnes. On June 11, 2013, the guardian *ad litem* filed his report, revealing that his attempts to meet with Agnes "were frustrated by [her] anger towards [her son, the petitioner,] for filing the" petition. Agnes informed the guardian that she had three children and that the respondent was the oldest. Agnes indicated to the guardian *ad litem* that guardianship was unnecessary and that she did not want the petitioner appointed as guardian. Agnes denied that she was financially exploited. On September 24, 2013, the circuit court appointed the petitioner as temporary guardian of Agnes's person and estate. On this date, the circuit court also revoked the respondent's agency pursuant to the power of attorney for property and the power of attorney for healthcare.

¶ 5 After an examination performed on October 20, 2013, Daniel J. Cuneo, Ph.D., submitted a report, which was later admitted into evidence, noting that Agnes was 91 years old at the time of the examination and that she was living at Charles Gardens, an

independent living center in O'Fallon, Illinois. Dr. Cuneo opined that Agnes's emotional, mental, and psychological functions were impaired and that she required a guardian over her person and estate. Accordingly, on November 21, 2013, the circuit court found that Agnes was a disabled adult without capacity and appointed permanent guardianship of Agnes's person and estate to the petitioner.

¶ 6     On January 14, 2014, the petitioner filed an inventory of Agnes's real and personal property, valuing her mobile home at $21,000; her checking account at $1,600; and her monthly income at $2,002.50. Thereafter, on February 4, 2014, and also on October 10, 2014, the petitioner filed petitions for citation against the respondent, Lisa, Shelley, and Barbara to produce estate assets or information to explain why approximately $358,939 of Agnes's funds or property had not been produced. On February 25, 2015, citing the five-year limitations found in section 13-205 of the Code of Civil Procedure (735 ILCS 5/13-205 (West 2014)), the respondent filed a motion to strike and to limit the petitioner's recovery to assets transferred less than five years prior to the petition for recovery citation.

¶ 7     After notification that the petitioner had settled with Lisa and Barbara, the circuit court heard evidence in February 2015. The respondent testified that in 2007, she "did everything" for Agnes by taking her to the doctor, to church, and to the store. The respondent testified that she visited Agnes two or three times a week and called her almost every day. The respondent acknowledged that Agnes spent the $440,000 settlement she received in 2007 in a short period of time. The respondent testified that

3

Agnes gifted funds to Lisa, Shelley, and Helen and that Agnes went on a cruise, bought hearing aids, prepaid for her funeral, bought appliances, and paid for her mobile home.

¶ 8 The respondent testified that she received approximately $15,500 to $20,000 from Agnes. The respondent testified specifically that when Agnes received the first settlement payment, Agnes gave the respondent $2,500 to repay a loan. The respondent testified that in 2008, Agnes also reimbursed the respondent for paying Shelley's rent and for purchasing Agnes's groceries, thereby paying her $5,700 and $4,000, which were amounts due on the respondent's credit cards. The respondent testified that prior to 2010, Agnes gave her an additional $1,000 and then $500 to thank her for her help. The respondent testified that she had paid almost $1,800 for an air conditioner for Agnes, and Agnes repaid her through monthly amounts of $78, $20, and $50. The respondent testified that in 2010, she borrowed $5,000 from Agnes, but on May 10, 2010, she began repaying the loan with cash and had repaid over $1,000. The respondent testified that Agnes had not indicated that she expected repayment.

¶ 9 The respondent testified that Agnes told her she would "do what she want[ed] with" her money. The respondent testified that Agnes was "in her right mind" until 2013, when the respondent began managing Agnes's finances. The respondent testified that she "kept the checkbook" from the middle of 2013 until 2014. The respondent testified, however, that she did not sign any check from Agnes to herself. The respondent testified that she "never signed [Agnes's] name to anything."

¶ 10 Shelley, Helen's daughter, testified that Agnes periodically paid her rent, bought three cars for her, and provided $6,000 cash to purchase a trailer. Shelley testified that

Agnes provided funds to her throughout her life, both before and after Agnes received the substantial settlement. Shelley testified that Agnes also bought a vehicle for Shelley's boyfriend. Shelley testified that she received approximately $20,000 from Agnes.

¶ 11 Lisa, Helen's daughter, testified that she received approximately $13,000 from Agnes. Lisa testified that Agnes paid a $1,500 deposit to purchase her home and provided funds for her car payment. Lisa testified that Agnes paid Helen's loan for her home and bought Shelley's friend, Tim McClade, a pickup truck for $1,500, in addition to giving him additional funds. Lisa testified that Agnes often provided cash or a debit card to her, to Shelley, and to other family members. Lisa testified that Agnes also donated to many solicitors telephoning or mailing in requests for donations. Lisa testified that Agnes often said that she would do what she wants with her money. Lisa testified that from 2007 through 2012, she often took Agnes to the bank where Agnes would write a check to cash. Lisa testified that in 2012, Agnes began having episodes where she hallucinated that there were 19th century men and women outside of her home.

¶ 12 Dr. James J. Needles, who had acted as Agnes's physician since February 23, 1993, testified that on June 3, 2013, he examined Agnes after she had been hospitalized for an evaluation for dementia. Dr. Needles testified that he diagnosed her with early dementia of Alzheimer's type.

¶ 13 The petitioner testified that Agnes received income—including pension payments, social security, and black lung compensation—to pay her monthly expenses. The petitioner identified various checks wherein he alleged that Agnes's signature had been falsified. The petitioner testified that the falsified checks amounted to $85,000. The

petitioner also testified that, pursuant to the respondent's family account records, the following amounts were added to the respondent's checking accounts: $17,000 in 2007, $17,263 in 2008, $10,000 in 2009, $11,000 in 2010, $10,000 in 2011, $13,000 in 2012, and $8,000 in 2013.

¶ 14    On September 9, 2015, the circuit court entered its order.  In its order, the circuit court found that Agnes wrote many checks to cash and gifted the cash to relatives.  The circuit court found, however, that the petitioner had not met his burden to show that additional funds represented by checks payable to cash were transferred to the respondent.  Instead, the circuit court found that Agnes gifted these funds to her other relatives who "also took advantage of her."  The circuit court found that Agnes consistently told her family members that she would do what she wanted with her money.  The circuit court found that Agnes had transferred $31,733.19 to the respondent.  Considering that a presumption of fraud arose pursuant to the execution of the power of attorney for property document, the circuit court determined that the respondent's testimony that the transactions were gifts or loans was self-serving and did not overcome the presumption of fraud.  The circuit court entered judgment in the petitioner's favor in the amount of $31,733.19.  Considering no presumption of fraud with regard to Shelley, the circuit court found the evidence insufficient to support judgment against her.

¶ 15    On September 28, 2015, the respondent filed a motion to reconsider, noting, among other things, that the circuit court incorrectly included in its judgment transactions that occurred prior to the execution of the power of attorney.  On November 25, 2015, after hearing arguments, the circuit court denied the motion to reconsider.  On December

10, 2015, the respondent filed a motion to clarify the judgment order, requesting the court to itemize the components of its $31,733.19 judgment. The circuit court dismissed the respondent's motion to clarify. The respondent thereafter filed a timely notice of appeal.

¶ 16                                    ANALYSIS

¶ 17    A citation proceeding under section 16-1 of the Probate Act of 1975 (755 ILCS 5/16-1 (West 2014)) is the statutory mechanism to recover assets that belong to the estate for purposes of paying estate expenses. *In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶ 24. " 'In a citation proceeding, the probate court is empowered to determine the title and right of property and enter such order as the case requires.' " *Id.* ¶ 25 (quoting *In re Estate of Elias*, 408 Ill. App. 3d 301, 315 (2011)). " 'The proceeding may be merely for the purpose of obtaining information with no adversary aspects, or it may develop into an out and out suit for the recovery of money.' " *Id.* (quoting *Keshner v. Keshner*, 376 Ill. 354, 359-60 (1941)).

¶ 18    " 'A finding of the trial court that certain property belonged to the estate will not be disturbed on appeal unless it is against the manifest weight of the evidence, [citation], as the trial court in such proceedings is authorized to determine all questions of title, claims of adverse title and the right of property.' " *Id.* ¶ 26 (quoting *In re Estate of Joutsen*, 100 Ill. App. 3d 376, 380 (1981)). " 'A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence.' " *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 41 (quoting *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002)).

7

¶ 19   In Illinois, a power of attorney creates a fiduciary relationship between the principal and the agent as a matter of law. *Deason v. Gutzler*, 251 Ill. App. 3d 630, 637 (1993).   An agent under a power of attorney has a fiduciary duty to the principal who made the designation.   See 755 ILCS 45/2-7(a), (b) (West 2014); *Spring Valley Nursing Center, L.P. v. Allen*, 2012 IL App (3d) 110915, ¶ 12.   The mere existence of a fiduciary relationship prohibits the agent from seeking or obtaining any selfish benefit for herself, and if the agent does so, the transaction is presumed to be fraudulent.   See *Clark v. Clark*, 398 Ill. 592, 601-02 (1947); *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 12; *Pottinger v. Pottinger*, 238 Ill. App. 3d 908, 918 (1992); *White v. Raines*, 215 Ill. App. 3d 49, 59 (1991).   "Thus, any conveyance of the principal's property that either materially benefits the agent or is for the agent's own use is presumed to be fraudulent." *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 12.

¶ 20   The presumption of fraud is not conclusive, however, and may be rebutted by clear and convincing evidence that the agent exercised good faith and did not betray the confidence placed in her. *Jones v. Washington*, 412 Ill. 436, 441 (1952); *Clark*, 398 Ill. at 601; *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 13; *In re Estate of DeJarnette*, 286 Ill. App. 3d 1082, 1088 (1997); *Glass v. Burkett*, 64 Ill. App. 3d 676, 681 (1978).   If the agent rebuts the presumption of fraud, the transaction in question will be upheld.   See 755 ILCS 45/2-7(a) (West 2014) (agent who acts with due care for the benefit of the principal will not be held liable merely because the act also benefits the agent); *Clark*, 398 Ill. at 602 ("[i]f a conveyance was not procured through improper means attended with circumstances of oppression or overreaching, but was entered into

8

by the grantor with full knowledge of its nature and effect and because of his or her deliberate, voluntary and intelligent desire, the existence of a fiduciary relation does not invalidate the transaction"); *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 13.

¶ 21 A rebuttable presumption does not shift the burden of proof, and is not evidence in itself, but arises as a rule of law or legal conclusion, which establishes a *prima facie* case of undue influence, in the absence of evidence to the contrary. *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 461-62 (1983). "Stated differently, the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption." (Internal quotation marks omitted.) *Id.* at 462. "If evidence is introduced which is contrary to the presumption, the presumption will cease to operate." (Internal quotation marks omitted.) *Id.*

¶ 22 The amount of evidence necessary to meet the presumption is not determined by any fixed rule and depends on the circumstances of each case. *Id.* at 463; *In re Estate of Pawlinski*, 407 Ill. App. 3d 957, 966 (2011). "Some of the significant factors to be considered in determining if the presumption of fraud has been rebutted include whether the fiduciary made a frank disclosure to the principal of the information he had, whether the fiduciary paid adequate consideration, and whether the principal had competent and independent advice." *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 13. The respondent must show by clear and convincing evidence that she exercised good faith and did not betray the confidence placed in her. See *Lemp v. Hauptmann*, 170

9

Ill. App. 3d 753, 757 (1988) (presumption of fraud is overcome by clear and convincing evidence that the transaction was fair and equitable and was not a result of undue influence). "The term 'clear and convincing' is a relative term." *In re Estate of Pawlinski*, 407 Ill. App. 3d at 966. "[T]he amount of evidence *** to meet the presumption varie[s] with the strength of the facts supporting the presumption." *Id.* at 965. "A party may simply have to respond with *some evidence* or may have to respond with *substantial evidence*." (Emphasis in original.) *Id.* at 966.

¶ 23    "Where there is a fiduciary relationship, a gift is not presumed, regardless of the relationship of the parties involved." *Deason*, 251 Ill. App. 3d at 638; *Lemp*, 170 Ill. App. 3d at 758 (fiduciary relationship between parent and child defeats presumption of a gift). "A trial court's determination as to whether a presumption of fraud has been overcome, made after an evidentiary hearing, is entitled to deference and will not be reversed on appeal unless it is against the manifest weight of the evidence." *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 14.

¶ 24    The respondent argues that the circuit court erred in applying a presumption of fraud or undue influence in this case because the gifts from Agnes to the respondent were not executed pursuant to the power of attorney. We reject the respondent's contention.

¶ 25    The execution of the 2007 power of attorney for property document authorized the respondent to manage and control Agnes's property and financial matters and established a fiduciary relationship between the respondent and Agnes as a matter of law. *In re Estate of Miller*, 334 Ill. App. 3d 692, 697 (2002); *Lemp*, 170 Ill. App. 3d at 757. As a result of the property power of attorney, any subsequent conveyance of Agnes's property

that either materially benefitted the respondent or was for the respondent's own use was presumed to be fraudulent. See *Jones*, 412 Ill. at 441; *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 12; *cf. McDonald v. McDonald*, 408 Ill. 388, 394 (1951) (because fiduciary relationship arose from business partnership, it did not extend to conveyance outside scope of partnership); *In re Estate of Stahling*, 2013 IL App (4th) 120271, ¶ 26 (because fiduciary relationship arose from healthcare power of attorney, no presumption of undue influence in transactions involving property or financial matters).

¶ 26 Because Agnes's transfers of property to the respondent were within the scope of the property power of attorney, the transfers gave rise to a presumption of fraud, even though almost all of the transfers were signed by Agnes personally and not by the respondent as agent under the power of attorney. See *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 13 (no question under the law that transfer of life estate from principal to agent gave rise to a presumption of fraud, even though deed was signed by principal personally); *In re Estate of Elias*, 408 Ill. App. 3d at 320 (subsequent to execution of power of attorney, transfer of property from principal to agent pursuant to transfer-on-death form gave rise to presumption of fraud even though principal, not agent under power of attorney, signed transfer-on-death form); *Pottinger*, 238 Ill. App. 3d at 920 (subsequent to execution of power of attorney, transfer of property from principal to agents gave rise to presumption of fraud or undue influence even though some of the transactions benefitting agents were executed by principal herself, not by agent through power of attorney); *White*, 215 Ill. App. 3d at 59 (subsequent to execution of power of attorney, transfer of property from principal to agent gave rise to presumption of fraud

11

even though none of the property in question was transferred pursuant to power of attorney). The fact that the power of attorney was not necessary for the transactions does not diminish the fact that a fiduciary relationship existed. See *In re Estate of Miller*, 334 Ill. App. 3d at 700 ("fact that the power of attorney was not necessary for the checking account transactions *** does not diminish the fact that a fiduciary relationship existed"). The respondent's duty was not limited only to transactions invoking her power of attorney. See *In re Estate of Elias*, 408 Ill. App. 3d at 320 (transactions benefitting the defendant after grant of power of attorney are presumed fraudulent).

¶ 27    Accordingly, as a result of the presumption, the respondent was required to show by clear and convincing evidence that she exercised good faith and did not betray the confidence placed in her. See *Lemp*, 170 Ill. App. 3d at 757 (presumption of fraud is overcome by clear and convincing evidence that the transaction was fair and equitable and was not a result of undue influence). We note that the strength of the facts supporting the presumption of fraud was tenuous. See *In re Estate of Pawlinski*, 407 Ill. App. 3d at 965 (amount of evidence to meet presumption varies with strength of facts supporting the presumption). The evidence revealed that Agnes's gifts to the respondent were consistent with the gifts she bestowed on her other relatives, the gifts were given while Agnes was competent and expressing a desire to gift, and Agnes consistently signed checks to the respondent in her own capacity, with the respondent signing only one check written to cash for $300. Thus, as noted, the respondent did not utilize her power of attorney to acquire the great majority of the gifts given by Agnes. *Cf. id.* at

966-68 (presumption of undue influence was strong because the evidence went far beyond the mere signing of the power of attorney).

¶ 28 Undue influence is defined as " 'any improper *** urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely.' " *Franciscan Sisters*, 95 Ill. 2d at 460 (quoting *Powell v. Bechtel*, 340 Ill. 330, 338 (1930)). The petitioner offered no evidence whatsoever of actual undue influence or fraud, relying completely on the presumption that arose from the execution of the power of attorney. However, the presumption of fraud was overcome by clear and convincing evidence that the transactions were fair and equitable and were not a result of undue influence. See *Lemp*, 170 Ill. App. 3d at 757.

¶ 29 Although we also recognize that the circuit court's judgment amount is unsubstantiated by its order, in that it seems to have improperly included, *inter alia*, funds transferred prior to the execution of the power of attorney (*In re Estate of Miller*, 334 Ill. App. 3d at 701 (no presumption of fraud regarding transfers prior to obtaining power of attorney)), we need not address the respondent's remaining arguments. The evidence before the circuit court revealed that the conveyances were not procured through improper means attended with circumstances of oppression or overreaching but were entered into by Agnes with full knowledge of their nature and effect and as a result of her deliberate and voluntary desire. Accordingly, the existence of the fiduciary relationship between Agnes and the respondent did not invalidate the transactions at issue. See *Clark*, 398 Ill. at 602; *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 13. The circuit court improperly entered judgment against the respondent.

13

¶ 30                              CONCLUSION

¶ 31    For the reasons stated herein, we reverse the judgment of the circuit court of St. Clair County, and we remand the cause for further proceedings consistent with this opinion.


¶ 32    Reversed and remanded.

2016 IL App (5th) 150564

NO. 5-15-0564

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* GUARDIANSHIP OF AGNES SPINNIE, )<br>a Disabled Adult )<br> )<br>(Richard Ervin, Guardian of the Person and )<br>Estate of Agnes Spinnie, Petitioner-Appellee, )<br>v. Patricia A. Gooch, Respondent-Appellant). )<br> ) | Appeal from the Circuit Court of<br>St. Clair County.<br><br>No. 13-P-273<br><br>Honorable Christopher T. Kolker,<br>Judge, presiding. |

_____

**Rule 23 Order Filed:** October 25, 2016
**Motion to Publish Granted:** November 22, 2016
**Opinion Filed:** November 22, 2016

_____

**Justices:** Honorable S. Gene Schwarm, P.J.

Honorable Judy L. Cates, J., and
Honorable James R. Moore, J.,
Concur

_____

**Attorneys**
**for**
**Appellant**

Edward J. Kionka, Lesar Law Building, MS 6804, 1150 Douglas Drive,
Carbondale, IL 62901; Curtis L. Blood, 1602 Vandalia, P.O. Box 486,
Collinsville, IL 62234-0486

_____

**Attorneys**
**for**
**Appellee**

Jayni A. Desai, Alana I. Mejias, Charles W. Courtney, Jr., Courtney,
Clark & Mejias, P.C., 104 S. Charles Street, Belleville, IL 62220

_____