NO. 4-05-0073

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

TERRY STEPHEN,

          Plaintiff-Appellee and                  Cross-Appellant,

          v.

VIRGINIA ROSE HUCKABA, as Independent Administratrix of the Estate of ROBERT POWERS, JR., Deceased,

          Defendant-Appellant and                 Cross-Appellee,

          and

ESTATE OF ROBERT POWERS, JR., a/k/a ROBERT JUNIOR POWERS,

          Deceased.

)

)

)

)

)))))

)

)

)

)

Appeal from

Circuit Court of

Clark County

Nos. 01CH12

     95P47

Honorable

Gary W. Jacobs and Robert B. Cochonour, 

Judges Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the court:

This case involves an executor's contract to sell real estate.  More than five years after the contract was signed, after the main residence on the premises had been destroyed by fire and after the executor had been removed from office, the buyer brought an action for specific performance.  The trial court ordered specific performance, giving the buyer credit for the insurance proceeds with the result that the buyer would pay $4,591.55 for 34.5 acres of land plus a second residence.  The buyer was also awarded attorney fees under the contract on the basis that the seller had defaulted.

I. BACKGROUND    

Robert Powers, Jr., died October 23, 1995.  His purported last will and testament, dated July 13, 1993, left $1 each to his son, Robert Eugene Powers, and to his daughter, Virginia Rose Huckaba.  The bulk of the estate was left to Powers's brother, Ralph N. Powers, and Powers's sister, Nellie Roberts.  The purported will nominated Ralph to serve as executor without bond and gave the executor "full power and authority without court order to sell or otherwise dispose of any of my property."

The purported will was admitted to probate and Ralph was issued letters of office as executor on October 27, 1995.  Five days later, November 1, 1995, before notice of the probate proceedings was mailed, Ralph entered into a real estate contract to sell Powers's residence and all personal property in and about the premises to Terry Stephen for $65,000.  See 755 ILCS 5/6-10(a) (West 2004) (notice must be given not more than 14 days after order admitting will or appointing representative).  The residence consisted of two houses and approximately 34.5 acres of land.

Immediately after they were served, Powers's son and daughter filed (November 9, 1995) a petition to contest the will and at the same time filed a 
lis
 
pendens
 notice with the county recorder of deeds.  On October 16, 1999, following a jury trial, the purported will was declared invalid and the letters issued to Ralph were revoked.  Virginia Rose Huckaba was issued letters of independent administration on October 27, 1999.

A. The June 26, 1997, Order

On January 12, 1996, while the petition to contest the will was pending, Ralph filed a petition for leave to sell decedent's real estate, attaching a copy of the real estate purchase contract with Stephen.  The petition to sell asked that Ralph be ordered to complete the real estate purchase contract and that the 
lis
 
pendens
 notice be released.  Leave of court is not necessary where the sale is made by a representative under a power given in a will.  755 ILCS 5/20-15 (West 2004).  Apparently Ralph and/or Stephen was uncomfortable proceeding without an order of the court, given the fact that a petition to contest the will was pending.  On March 26, 1996, the main residence on the property and all contents thereof were destroyed by fire.  On February 20, 1997, Judge Robert B. Cochonour signed an order, filed June 26, 1997, finding "that it is not in the best interest of the estate to complete the contract to sell the real estate."  The order had been approved as to form by the parties.

After her appointment October 27, 1999, the independent administratrix collected a real property insurance payment in the amount of $56,223.93 and a personal property insurance payment in the amount of $3,950.  She also paid the real estate taxes on the property for 1996, 1997, 1998, 1999, and 2000.  

B. The January 30, 2002, Order

On March 19, 2001, Stephen filed a new complaint for specific performance of the November 1, 1995, real estate contract.  That action was consolidated with the probate case.  On January 22, 2002, Judge Cochonour signed a "Judgment of Court," filed January 30, 2002, finding that Stephen "is granted judgment of specific performance."  "The [c]ourt has also relied on the testimony regarding the good[-]faith nature of the transaction in that the [e]xecutor made inquiry into the value of the property before entering the contract, and that it does not appear to be unconscionable."  The court "respectfully denies judgment of relief as requested in the [a]mended [c]omplaint for [s]pecific [p]erformance" (a request for attorney fees under paragraph 9 of the real estate contract).  The court found that Stephen was obligated to pay real estate taxes: 

"as if the sale was closed on the antici-

pated date of December 1, 1995.  In addition, 

if defendants have paid any sums for the 

subscription and obtainment of rural water, 

they shall be entitled to recover such 

costs."

The order did not mention that the residence had been destroyed by fire or that insurance proceeds had been received.  The court, without comment, vacated its order entered on February 20, 1997, which had found "that it is not in the best interest of the estate to complete the contract to sell real estate."

Judge Cochonour resigned from office May 25, 2002.  On January 3, 2003, Judge Cochonour entered a plea of guilty to theft in excess of $100,000, as executor, from the estate of Jay E. Hayden, deceased, a Class 1 felony.  720 ILCS 5/16-1(a) (West 2004); People v. Cochonour, case No. 03-CF-1 (Cir. Ct. Cumberland Co.)
.  Stephen's attorney, Ralph Glenn, and his firm represented the estate of Jay Hayden and Judge Cochonour at least from March 6, 2002, to June 24, 2002, for which they were paid $7,512.50.  The independent administratrix complains that Glenn represented Judge Cochonour while Cochonour was still assigned to this case.  Glenn responds that there is no showing in this record that anything was set in front of Judge Cochonour after the order was filed on January 30, 2002, although technically it was still under him.       

On September 20, 2002, Stephen filed a "Petition for Representative to Complete Contract," asking that his reimbursement of the estate for taxes be set as follows: 1995, $63.42; 1996, $501.50; 1997, $190.48; 1998, $316.34; 1999, $332.75; and 2000, $357.76.  Stephen asked for a credit against the purchase price in the amount of the insurance proceeds, $56,233.93 and $3,950.  A handwritten provision in the contract stated, "13. INSURANCE: Seller shall keep premises insured and in the event of loss, proceeds shall be payable to the Buyer and Buyer shall pay this contract in full."  Such a credit would allow Stephen to purchase the real estate for less than $5,000, even though its appraised value on October 21, 1997, was $47,000.  Stephen again asked for attorney fees pursuant to paragraph 9 of the contract, which provided that "[d]efault by any party of this Contract shall entitle the non-defaulting party to *** attorney's fees and expenses incurred in connection with judicial enforcement of this Contract."

The court (Judge Jacobs) entered an opinion August 19, 2004.  Defendants filed a notice of appeal (No. 4-04-0827).  Stephen moved to dismiss the appeal as premature, stating that there were "untried and unresolved issues in the trial court."  On October 20, 2004, Stephen's motion to dismiss appeal as premature was allowed by this court.   

C. The January 12, 2005, Order

The trial court (Judge Jacobs) then entered a formal judgment order January 12, 2005, which was approved as to form by the parties.  The judgment directed the independent adminis-tratrix to execute a deed to Stephen in the form set out in an exhibit.  The judgment agreed with Stephen's calculation of taxes, agreed that Stephen was entitled to a credit for the insurance proceeds, and directed him to pay $4,591.55 in exchange for the deed.  The judgment recited that it was a final, appealable order, appealable under Supreme Court Rule 304(b)(1)  (134 Ill. 2d R. 304(b)(1)), and if for any reason it was not appealable under that rule, then the court found that it was appealable under Rule 304(a) (134 Ill. 2d R. 304(a)).  Defendants filed a notice of appeal January 24, 2005.

II. ANALYSIS

Stephen argues that Judge Cochonour's order entered January 22, 2002, was a final, appealable order, no appeal was taken, and the matters adjudicated therein can no longer be disputed.  Stephen does not dispute, however, that issues remained pending after the January 22, 2002, order that may be properly addressed in the present appeal.  We review questions of law, including the construction of statutes and supreme court rules, 
de
 
novo
.  
In re Estate of Burd
, 354 Ill. App. 3d 434, 436, 820 N.E.2d 613, 615 (2004).

A. Immediate Appeal of Orders in Estates 

Supreme Court Rule 304(b)(1) provides that the following judgments and orders are appealable without the finding required under Rule 304(a):  "A judgment or order entered in the administration of an estate *** which finally determines a right or status of a party."  155 Ill. 2d R. 304(b)(1).  Orders within the scope of Rule 304(b)(1), even though entered before the final settlement of estate proceedings, must be appealed within 30 days of entry or be barred.  
In re Estate of Devey
, 239 Ill. App. 3d 630, 633, 607 N.E.2d 685, 687 (1993); 
In re Estate of Thorp
, 282 Ill. App. 3d 612, 616, 669 N.E.2d 359, 362 (1996).  "A central reason behind making the time for appeal of such orders mandatory, and not optional, is that certainty as to some issues is a necessity during the lengthy procedure of estate administration."  
In re Estate of Kime
, 95 Ill. App. 3d 262, 268, 419 N.E.2d 1246, 1250 (1981).  Without the Rule 304(b)(1) exception, an appeal would have to be brought after an estate was closed, the result of which might require reopening the estate and marshaling assets that have already been distributed.  That result would be both impractical and inefficient.  
Thorp
, 282 Ill. App. 3d at 616-17, 669 N.E.2d at 362.       

Only final orders fit within Rule 304(b)(1).  It is not necessary that the order resolve all matters in the estate, but it must resolve all matters on the particular issue.  "'A final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit *** and disposes of the entire controversy; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.'"  
W.L. Miller Co. v. Zehnder
, 315 Ill. App. 3d 799, 804, 734 N.E.2d 502, 506 (2000), quoting 
Pekin Insurance Co. v. Benson
, 306 Ill. App. 3d 367, 375, 714 N.E.2d 559, 565 (1999).

Judge Cochonour's January 22, 2002, order clearly did not dispose of the entire controversy.  The order appears to be more of a memo than a final resolution of all issues connected with the contract for sale.  It did not address the major question whether Stephen was entitled to a credit for the insurance proceeds.  The order contains a number of "ifs":  "if" defendants have paid any sums for water; taxes shall be paid "as if" the sale closed on December 1, 1995.  Stephen's argument that the order was final is inconsistent with the position he later took as to attorney fees.  The order of January 22, 2002, refused to allow Stephen attorney fees and expenses under paragraph 9 of the real estate contract, but Stephen subsequently petitioned for such fees, and the trial court allowed the petition as to attorney fees incurred since its order of August 17, 2004.  Stephen argues that Judge Cochonour's order of January 22, 2002, was the entry of the final judgment and subsequent proceedings were only to enforce that judgment.  In fact, every order entered in this case has addressed enforcement of the contract.  An attempt to obtain specific performance is an attempt to enforce a contract.  The proceedings continued after the January 2002 order; they did not come to a halt.

The true final order in this case was the order entered June 26, 1997, when Judge Cochonour denied Ralph's petition asking that he be ordered to complete the real estate purchase contract.  Judge Cochonour found "that it is not in the best interest of the estate to complete the contract to sell the real estate."  That order disposed of the entire controversy and no appeal was taken, as required by Rule 304(b)(1).  Judge Cochonour was not free to ignore the June 26, 1997, order when he revisited the matter in January 2002.  The various orders in this case addressed different allegations made by the parties:  a petition for an order to complete the contract, a complaint for specific performance, a petition to complete contract.  Still, there was only one cause of action here, an attempt to enforce the contract.  Separate claims constitute the same cause of action if they arise from a single group of operative facts even if they assert different theories of relief.  
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998).  In 1997, Judge Cochonour ruled that the contract should not be completed.  That should have finished the matter.

It is true that Stephen was never formally made a party to the 1996 probate proceedings.  Nevertheless, Stephen's rights under the real estate contract were dependent on the power of the executor to sell the property.  After the court's order of June 26, 1997, the executor had no power to sell the property or comply with the contract. 

B. Section 20-15 of the Probate Act

Judge Cochonour's January 22, 2002, order relied on section 20-15 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/20-15 (West 2004)) for the proposition that the executor was required to complete the contract even after the will had been revoked and the executor removed.  "The [c]ourt would further represent that its ruling has been influenced by the practical need to accommodate transfer [of] property in probate proceedings without unduly burdening the purchaser of property subject to probate proceedings with extreme or laborious inquiry as to the status of the estate."  Judge Jacobs's order of August 19, 2004, did the same.

Section 20-15 of the Probate Act contains the following language:

"If a representative leases, 
sells
[,] or mortgages a decedent's real estate or interest, the lease, 
sale
[,] or mortgage is valid regardless of the subsequent setting aside of the will or any other action which might limit or restrain the right of the representative to lease or to convey title or to mortgage the real estate or interest.  A

lessee, purchaser[,] or mortgagee from a 

representative obtains the same title or in-

terest as though the instrument were executed 

by the decedent immediately prior to his 

death, and the rights and claims of all 

parties claiming under or through the decedent 

thereupon are transferred to the consideration 

received or to be received from such lease, 

sale[,] or mortgage."  (Emphases added.)  755 

ILCS 5/20-15 (West 2004). 

See also 755 ILCS 5/23-8 (West 2004) (acts done before revocation of letters are valid).

The property subject to the real estate purchase contract here was not sold; there was never a closing, a transfer of possession, or payment of the purchase price.  The executor, Ralph Powers, did not attempt to sell the property under section 20-15 but only filed a petition to sell real estate pursuant to section 20-4.  See 755 ILCS 5/20-15, 20-4 (West 2004).    

The purpose of section 20-15 is to protect 
bona
 
fide
 purchasers for value without notice.  Once a transaction has proceeded to the point that the purchaser has paid the purchase price and taken possession, the transaction is final.  Executors' deeds would not be very marketable if they could be set aside years after they were made.  Section 20-15 makes the time of sale the cutoff point.  Purchasers are, however, bound by the setting aside of a will or other actions that limit or restrain the right of the representative to convey title if those events occur prior to sale.  Executors do not have the power to make will contests or petitions to remove irrelevant by simply entering into preliminary negotiations for sale.

The argument is made that the language in section 20-15, "consideration received or to be received," broadens the application of the section beyond sales to include contracts for sale.  Under that interpretation it would be irrelevant whether a "sale" had taken place.  It is not inconsistent to have a completed sale and for payments to be received in the future, as where the buyer gives the seller a note for the purchase price.  We conclude section 20-15 only applies when there has been a sale.        

      C. Notice to Stephen

A fact is sufficient to put a person on notice if it would put a reasonable person on inquiry.  
Reed v. Eastin
, 379 Ill. 586, 592, 41 N.E.2d 765, 768 (1942).  A purchaser from an executor is charged with notice of the extent of the testamentary authority conferred by the will.  31 Am. Jur. 2d 
Executors &
 
Administrators
 §846 (2002).  A purchaser from an executor is also charged with notice of the court proceedings in which the will has been probated.  Parties with actual notice of pending proceedings affecting the property are subject to the 
lis
 
pendens
 doctrine even if there has been no compliance with the filing requirements of the statute (735 ILCS 5/2-1901 (West 2002)).  
First Midwest v. Pogge
, 293 Ill. App. 3d 359, 363, 687 N.E.2d 1195, 1198 (1997).  Stephen's real estate purchase contract here listed "Ralph N. Powers, [e]xecutor of the [e]state of Robert Powers, Jr.," as the seller.  Stephen accordingly had actual knowledge of the existence of the estate proceedings. 

III. CONCLUSION

Accordingly, we reverse the trial court's order requiring Virginia, as independent administratrix of the estate, to complete the contract and pay Stephen's attorney fees incurred since August 19, 2004.  As a result of our ruling, the contract does not give Stephen a right to possession of the personal property of the estate.  Therefore, we remand for further proceedings on the petition for citation to recover assets and to discover information filed by Virginia, as independent administratrix, on January 31, 2001.

Reversed and remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.