2022 IL App (1st) 182214-U

SIXTH DIVISION
December 9, 2022

No. 1-18-2214

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF FILIP ROTHEIMER, Under Limited Guardianship, Now Deceased | ) ) ) | |
| (Fifth Third Bank, N.A. (f/k/a MB Financial Bank, N.A.), as the Limited Guardian of the Estate of Filip Rotheimer, formerly under Limited Guardianship, now deceased, and Fifth Third Bank, N.A. (f/k/a MB Financial Bank, N.A.), as Former Successor Trustee of the Filip Rotheimer Trust u/a/d January 22, 1998, | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County No. 12 P 6822 |
| Petitioner-Appellant, | ) ) ) | The Honorable Shauna Boliker, |
| v. | ) ) | Judge, presiding. |
| Silvia Vince, | ) ) ) | |
| Respondent-Appellee). | ) | |

_____

JUSTICE TAILOR delivered the judgment of the court.
Justices Walker and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Appeal dismissed where the orders appealed from are not final judgments under either Illinois Supreme Court Rule 301 or Rule 304(b)(1).

¶ 2    This appeal arises out of guardianship proceedings initiated during the lifetime of Filip

Rotheimer, which unfortunately have continued long after his death. We are asked to review the

circuit court's rulings on various objections raised by Filip's children to a final accounting submitted by MB Financial Bank, N.A. (MB),[1] in its capacities as both the limited guardian of Filip's estate and the former trustee of the Filip Rotheimer Trust. The circuit court ruled on the objections and some of those rulings did not favor MB. The circuit court denied most of MB's subsequent motion to reconsider, and MB now appeals.

¶ 3     On appeal, MB argues the circuit court misconstrued Illinois land trust law, misapplied the requirements for an accounting, improperly required MB to provide information that did not exist during Filip's life, and improperly reconsidered rulings made by the judge previously assigned to the case. We do not reach the merits of MB's arguments because, as we explain below, the orders from which MB appeals are not final and appealable. Hence, we must dismiss MB's appeal for lack of appellate jurisdiction.

¶ 4                                I. BACKGROUND

¶ 5     Our review of this appeal has been hampered by MB's appellate brief. Rather than providing direct citations to the portions of the over 5000-page record to support its statement of facts, MB regularly cites to a summary of the facts in one of its own filings submitted to the circuit court. Supreme Court Rule 341(h)(6) (eff. May 25, 2018) requires citations to the pages of the record that support factual statements so that this court can understand what occurred in the circuit court. MB should have provided primary record source citations. MB's failure has required this court to expend an inordinate amount of time to verify the facts it summarized for the circuit court by examining other, uncited portions of the record so that we can assure ourselves that we have an accurate understanding of the proceedings below. We urge MB's counsel to adhere more closely to both the letter and spirit of Rule 341(h)(6) in any future appellate briefs.

---

[1]MB is now known as Fifth Third Bank, N.A., which has been substituted as the real party in interest. For simplicity, we will refer to it as MB.

¶ 6    The following facts are reflected in the record. In 2012, Filip's daughter, Silvia Vince, also known as Kriemhilde Silvia Vince (Silvia), filed a petition for the appointment of a guardian for Filip. Silvia's petition alleged Filip was 92 years old and was "totally incapable of handling his personal and financial affairs due to apparent dementia of the Alzheimer's type." She alleged Filip's "behavior is becoming more bizarre and erratic with recent exhibiting of agitation and verbal aggression towards others and also relating to the management of [Filip's] numerous residential properties containing approximately 200 apartments," and that he was no longer taking care of himself. The circuit court appointed a guardian *ad litem* and appointed Silvia as the temporary guardian of Filip's estate for the limited purpose of protecting Filip's interests in pending litigation in the chancery division of the circuit court. Filip's two other children, Florence M. Corcoran and Phillip Rotheimer, filed separate cross-petitions seeking to be appointed as the guardian of Filip's estate. At the time of Florence's petition, she was serving as the successor trustee of the Filip Rotheimer Trust.

¶ 7    In June 2013, Florence agreed to resign as the successor trustee of the Filip Rotheimer Trust and to file an accounting or petition in lieu of an accounting of all actions she took as trustee, and to produce all of Filip's bank account and other financial records. The circuit court ultimately appointed Florence and Phillip as the limited co-guardians of Filip's person.

¶ 8    In July 2013, the circuit court appointed MB as successor trustee of the Filip Rotheimer Trust, and as the limited guardian of Filip's estate. MB's acceptance of the appointments was conditioned on a 60-day due diligence period and approval of its fee schedule. Between July and October 2013, Phillip, Silvia, and Filip's granddaughter, Denise Rotheimer, filed separate petitions seeking MB's removal. The circuit court denied all the removal petitions. In January 2014, after a

3

lengthy due diligence period, MB accepted permanent appointment as the limited guardian of Filip's estate and as successor trustee of the Filip Rotheimer Trust.

¶ 9                                    A. Filip's Properties

¶ 10    Filip, through various entities and trusts, held ownership interests, directly or indirectly, in eight residential and commercial properties in Illinois (collectively, the properties), and his business consisted of managing these properties. The properties are located at: (1) 1730-90 Mark Avenue, Elgin; (2) 1710 Mark Avenue, Elgin; (3) 1720 Mark Avenue, Elgin; (4) 1060 Briden Drive, Marengo; (5) 604-620 Grant Highway, Marengo; (6) 430-444 Johnson Avenue, Marengo; (7) 4751-59 North Sheridan Road, Chicago; and (8) 750 St. Johns Road, Woodstock.

¶ 11    The record reflects that the properties were held and owned by an array of land trusts and limited liability companies (LLCs), and that the Filip Rotheimer Trust had an interest in the LLCs. The following is a summary of how title to the properties were held, and the Filip Rotheimer Trust's interests in the entities that held the title:

- Title to 1730-90 Mark Avenue was held by Cosmopolitan Bank & Trust, as trustee under trust agreement (u/t/a) #10901, dated 1/15/1977 (Trust #10901). Sunnyside Garden Elgin Apartments, LLC was the beneficiary of Trust #10901, and held a power of direction. The Filip Rotheimer Trust owned a 70.84% interest in Sunnyside Garden Elgin Apartments, LLC. The remaining interest in the LLC had purportedly been gifted to Filip's family members.

- Title to 1710 Mark Avenue, 1720 Mark Avenue, 1060 Briden Drive, and 430-444 Johnson Avenue was held by Park National Bank, as trustee u/t/a #7321, dated 12/31/1965 (Trust #7321). Sunnyside Elgin Apartments, LLC was the beneficiary of Trust #7321, and held a power of direction. The Filip Rotheimer Trust owned a

92.02% interest in Sunnyside Elgin Apartments, LLC. The remaining interest in the LLC had purportedly been gifted to Filip's family members.

- Title to 604-620 Grant Highway was held by Park National Bank, as trustee u/t/a #32323, dated 11/27/06 (Trust #32323). Sunnyside Garden Apartments, LLC was the beneficiary of Trust #32323. Filip held a power of direction. The Filip Rotheimer Trust owned 100% of Sunnyside Garden Apartments, LLC.

¶ 12    According to the record and the parties' appellate briefs, the remaining two properties—4751-59 North Sheridan Road and 750 St. Johns Road—were under different ownership. First, title to 750 St. Johns Road was held by Chicago Title Land Trust Co., as trustee u/t/a #7519, dated 6/15/1966. It is unclear from the record who the beneficiaries were of Trust #7519, but Filip held a power of direction. The Filip Rotheimer Trust owned 100% of Sunnyside Woodstock Apartments, LLC, but there is nothing to suggest that such LLC was the beneficiary of Trust #7519.

¶ 13    Second, title to 4751-59 North Sheridan Road was held by Chicago Title Land Trust Co., as trustee u/t/a #5903, dated 10/18/1962. Filip was the beneficiary of Trust #5903 and he held a power of direction. In the circuit court and in this court, the parties agree that, upon Filip's death, his beneficial interest in Trust #5903 passed to Silvia and Phillip.[2]

¶ 14    The circuit court permitted MB to retain Chicago Real Estate Resources, Inc. (CRER) as the property manager for the properties, and MB set about identifying and transferring control of Filip's assets, including bank accounts associated with the properties. MB contends its efforts were

---

[2]We note that while this appeal was pending, this court decided *Corcoran v. Rotheimer*, 2022 IL App (1st) 201374, finding that Filip successfully assigned his beneficial interest in Trust #5903 to Sunnyside Chicago Apartments, LLC, the sole member of which was the Filip Rotheimer Trust. Due to our disposition of this appeal, we did not ask the parties to explain the significance, if any, of our decision in *Corcoran* to the issues in this appeal.

hampered by Filip's family members' intransigence, refusal to provide—or provision of incomplete—information about the properties, or outright interference.

¶ 15    Sometime in October 2014, MB prepared its First Current Accounts of the Estate and Trust (collectively, the First Current Accounts) for the period of July 3, 2013, through June 30, 2014, but did not immediately present them to the circuit court due to concerns raised by Silvia about their accuracy. MB and Silvia conferred regarding her concerns, and MB eventually presented the First Current Accounts to the circuit court in February 2015. Silvia and Filip both filed written objections to the First Current Accounts and the parties briefed the objections. After a hearing, MB agreed to make certain amendments to the First Current Accounts. On August 31, 2015, the circuit court sustained some of Silvia's objections, ordered MB to show that it had received Florence's accounting of the time during which she was trustee of the Filip Rotheimer Trust, and ordered MB not to commingle any security deposits with operating accounts for the properties. (We note the circuit court did not find that MB had, in fact, commingled security deposits with the operating accounts.) The circuit court also ordered MB to provide more clarity for certain expenses in future accountings. Silvia's remaining objections were overruled. Further, in response to some of Filip's objections, MB agreed that it would amend the First Current Accounts to reflect assets that had been collected outside the accounting period. The circuit court's August 31, 2015, order did not expressly approve or deny the First Current Accounts.

¶ 16    Filip died on September 13, 2015, and a separate probate case was opened for his estate. Although not made clear in the parties' appellate briefs, Florence was appointed as the supervised executor of Filip's estate in the separate probate case.

¶ 17    In January 2016, MB presented its First Current Accounts, as amended, to the circuit court and filed a fee petition. Silvia filed additional written objections to the First Current Accounts, as

amended, and to the fee petition. On March 2, 2016, the circuit court approved the First Current Accounts, as amended, approved the inventories of the estate and Filip Rotheimer Trust, and awarded MB its guardian of the estate and trustee fees. The circuit court subsequently granted MB's petition for attorney fees and ordered MB to present a final accounting of both the estate (Final Estate Account) and the Filip Rotheimer Trust (Final Trust Account) (collectively, the Final Accounts).

¶ 18    MB filed a notice of the Final Accounts. It is not clear from the record whether the Final Accounts themselves were filed with the circuit court at that time, but the record reflects they were filed at some point. On May 3, 2016, the circuit court gave Silvia time to file objections. MB and Silvia conferred about Silvia's concerns over the Final Accounts, and MB indicated it needed additional time to gather and provide documents for Silvia's review. MB made amendments to the Final Accounts, and the circuit court extended the time for Silvia to file objections. On September 7, 2016, Silvia filed numerous objections to the Final Accounts. MB prepared an addendum to its amended Final Accounts. Phillip filed objections and Silvia filed amended objections, which the parties briefed. On December 20, 2017, after hearing argument on the Final Accounts and all the objections, the circuit court entered a written order sustaining some of the objections and overruling others.

¶ 19                    A. Silvia's Objections to the Final Estate Account
                            and the Circuit Court's Rulings

¶ 20    Silvia raised 22 objections to the Final Estate Account, some of which the circuit court overruled. We explain in some detail the circuit court's rulings on certain objections relevant to this appeal because they bear directly on this court's jurisdiction. The following is a summary of the objections raised by Silvia that the circuit court sustained in full or in part.

¶ 21    Silvia objected that MB failed to account for tools and equipment at the building located at 4751-59 North Sheridan Road (estate objection 11). The circuit court sustained objection 11 and ordered that "CRER should make the list of tools as part of it's [*sic*] management duties."

¶ 22    Silvia objected that MB's accounting for the operating account associated with 4751-59 North Sheridan Road was inaccurate: MB reported that on June 30, 2015, the account value was $16,345.98; on March 31, 2016, the account value was $0; and on March 11, 2016, MB delivered $2197.11 to Phillip. But according to MB's own documentation, the net amount in the account was $13,825.04, leaving $11,627.93 unaccounted for (estate objection 12). The circuit court sustained estate objection 12 and ordered that "MB should explain why the account lost value." Silvia also objected to MB's distribution of $2197.11 to Phillip, a 50% beneficiary of Trust #5903, because MB did not notify Silvia, the other 50% beneficiary (estate objection 13), and MB did not provide a receipt for the distribution (estate objection 14). The circuit court sustained estate objection 13 in part, ruling "Silvia should also receive the same 50% distribution as Phillip." The circuit court sustained estate objection 14 in part, finding that there was no need to close the account, but that "a document should be prepared showing the closing he [*sic*] account and the new owner should acknowledge that closing and the distribution of the remains of the account."

¶ 23    Silvia objected that MB's accounting did not reflect any outstanding rents receivable in CRER's cash flow for July 2014 through September 2015 (estate objection 16). The circuit court overruled estate objection 16 in part but ordered MB and CRER to "document why there was a difference in the cash flow statement and the IRS Form 1040."

¶ 24    Silvia objected that CRER's cash flow for July 2014 through September 2015 did not provide information regarding various disbursements (estate objection 17). The circuit court sustained the objection and ordered CRER to "provide detailed backup for the line items listed."

¶ 25    Silvia objected that MB's accounting for the security deposit account associated with 4751-59 North Sheridan Road was inaccurate: MB reported that on June 30, 2014, the account had a value of $31,035.05, and on March 21, 2016, the account was closed and $21,397.30 was "delivered to Phillip Rotheimer as a beneficiary" (estate objection 18). Silvia further objected that MB's documentation showed $2196.44 was unaccounted for at the close of the account (estate objection 19). She also objected that the Final Estate Account insufficiently explained the difference between the starting balance of the security deposit account on June 30, 2014, and July 1, 2014 (estate objection 20). The circuit court sustained objections 18, 19, and 20, and ordered MB and CRER to "account for the differences in the account dated 6/30/2014 and 3/21/2016."

¶ 26    Silvia objected that MB distributed $21,397.30 to Phillip without notifying her (objection 21) and that MB had not provided a receipt of distribution to Phillip for the $21,397.30 disbursement (estate objection 22). The circuit court sustained objection 21 and ordered MB to issue a check for $21,397.30 to Silvia from Trust #5903. The circuit court sustained objection 22 in part, ordering MB to "document the fact that this check was issued to Phillip R. as a 'payable on death' account," and further ordered MB to do the same with the check it would issue to Silvia.

¶ 27    Silvia objected that MB had not provided a receipt on distribution signed by Florence, in her capacity as supervised executor of Filip's estate, for title to a van (estate objection 25). The circuit court sustained the objection and ordered MB to obtain a receipt.

¶ 28    Silvia objected that MB failed to specify the amount spent on maintenance and repairs for 4751-59 North Sheridan Road (estate objection 29). The circuit court sustained the objection and ordered MB and CRER to prepare detailed descriptions of the expenditures.

¶ 29    Silvia objected that MB obtained estimates of $130,000 for repairs at 4751-59 North Sheridan Road to correct building code violations but had only spent $43,745.58 (estate objection

30). The circuit court sustained the objection and ordered MB and CRER to document the repairs performed and the cost of such repairs.

¶ 30    Finally, Silvia objected that MB and CRER did not adequately address or account for 73 building code violations at 4751-59 North Sheridan Road, which was the subject of administrative proceedings brought by the City of Chicago (estate objection 31). The circuit court sustained the objection and ordered MB and CRER to document which code violations were corrected, and which were still outstanding.

¶ 31                    B. Silvia's Objections to the Final Trust Account
                          and the Circuit Court's Rulings

¶ 32    Silvia raised numerous objections to MB's Final Trust Account, some of which the circuit court overruled. We again explain in some detail the circuit court's rulings on certain objections relevant to this appeal because they bear directly on this court's jurisdiction. The following is a summary of the objections raised by Silvia that the circuit court sustained in full or in part.

¶ 33    Silvia objected that MB failed to provide any documentation to show it transferred management duties for the various LLCs to Florence in her capacity as supervised executor of Filip's estate (trust objections 11, 17, 27, 36, and 53). The circuit court sustained the objections and ordered MB to provide documentation of the transfers.

¶ 34    Silvia objected that MB had not adequately documented the disbursement of a trust asset—a 2005 Chrysler van—because there was no receipt on distribution (trust objection 13). The circuit court sustained the objection and ordered MB to provide a receipt. Silvia also objected that MB had not accounted for tools and equipment belonging to some of the LLCs (trust objections 18, 28, 37, and 54). The circuit court sustained those objections and ordered MB and CRER to provide an inventory for the tools and equipment.

¶ 35    Silvia objected that MB collected several checking accounts associated with various LLCs in July 2014 but never provided an accounting of those accounts for the period between July 3, 2013 (when Florence resigned as trustee) and the date MB collected the accounts (trust objections 14, 23, 34, 50, and 60). Silvia also objected that MB failed to account for whether MB verified the account values or determined whether any deposits were made (trust objections 15, 24, 34, 51, and 61), and she questioned whether MB properly handled trust assets by collecting the checking accounts more than 12 months after MB was appointed as trustee (trust objections 16, 25, 35, 52, and 62). The circuit court sustained trust objections 14-16, 23-25, 34, 35, 50-52, and 60-62, and ordered MB to provide an accounting for the checking accounts. After MB filed a motion to reconsider, the circuit court overruled trust objections 25 and 32 in which Silvia questioned whether MB properly handled trust assets.

¶ 36    Silvia objected that MB did not properly document disbursements of LLC operating accounts to the successor trustee (trust objections 19, 29, 38, 42, 45, and 55) and did not account for outstanding rents receivable (trust objections 20, 30, 43, 46, and 56). She also objected that MB did not properly document disbursements of security deposit accounts to the successor trustee (trust objections 21, 31, 40, 44, 47, and 57), or provide any accounting for changes in the amounts reportedly held in some of the security deposit accounts (trust objections 22, 32, 41, 48, 58). The circuit court sustained the disbursement-related objections and ordered MB to account for, and provide receipts for, the distributions. The circuit court further ordered MB to provide a more detailed accounting for rent and security deposit accounts, although the circuit court overruled trust objection 22.

¶ 37    Silvia objected to disbursements MB made from trust accounts to pay for LLC filing fees, licensing fees, repairs to an LLC-owned vehicle, appraisal fees, and tax preparation. She asserted

these payments were not authorized by any court order and were operating expenses of the LLCs that should have been paid from the LLCs' operating accounts (trust objections 63 and 64). She additionally objected that expenses paid from the trust for LLC filing fees, tax preparation, and payment of real estate taxes for multi-member LLCs were effectively capital contributions that would result in changes in percentage ownership interests, which were not reflected in MB's accounting (trust objection 65). The circuit court sustained trust objections 63-65 and ordered MB to address the accounting issues raised in the objections.

¶ 38    Silvia objected to MB's transfer of approximately $130,000 to a construction escrow account related to Sunnyside Chicago Apartments, LLC because such action was not authorized by court order (trust objection 66). She further objected that MB did not provide any accounting of the escrow account (trust objection 68). The circuit court sustained trust objection 66 in part and ordered MB to account for which building code violations were corrected and which remained outstanding, to provide documentation from the City of Chicago as to whether the corrections were accepted by the city, and to advise as to whether there were any code enforcement actions that involved penalties. The circuit court sustained trust objection 68 and ordered MB to advise as to the status of the escrow account.

¶ 39    Finally, Silvia objected that MB's accounting did not provide any details regarding numerous disbursements from the LLCs' accounts (trust objection 75). The circuit court sustained the objection and ordered MB to provide detailed backup information for each of the LLCs.

¶ 40                              C. MB's Motion to Reconsider

¶ 41    MB filed a motion to reconsider the circuit court's December 20, 2017, order, making numerous arguments, including (1) MB no longer had the authority or responsibility to maintain or manage the land trust's property once Filip died because his beneficial interest in Trust #5903 passed by operation of law to Silvia and Phillip, the successor beneficiaries under the terms of the

land trust; (2) the circuit court misconstrued the legal requirements for an accounting by requiring MB to provide more information than was necessary to understand Filip's assets, and erroneously required MB to obtain receipts for distributed trust and estate assets; (3) the circuit court erred by requiring MB to provide information that was created after Filip's death because, upon Filip's death, MB no longer had any duty to provide information that had passed by law to new beneficiaries or belonged to Filip's estate; (4) the circuit court improperly reconsidered rulings of the judge who approved the First Current Accounts; and (5) the circuit court made factual errors in ruling on some of the objections and failed to rule on MB's petition for guardian of the estate, trustee, and LLC manager fees.

¶ 42    The parties briefed MB's motion to reconsider and the circuit court heard argument. On September 17, 2018, the circuit court entered a written order denying most of the motion to reconsider and reversing certain of its rulings on Silvia's objections. The circuit court did not rule on MB's various fee petitions.

¶ 43    On October 16, 2018, MB filed its notice of appeal identifying the circuit court's December 20, 2017, and September 17, 2018, orders as the subject of this appeal.

¶ 44                                   II. JURISDICTION

¶ 45    MB asserts that we have jurisdiction under Supreme Court Rule 303(a) (eff. July 1, 2017) and Rule 304(b)(1) (eff. Mar. 8, 2016). It argues the circuit court's December 20, 2017, and September 17, 2018, orders "finally determined MB's rights as to the matters covered by the Final Accounts," even though the orders did not dispose of the guardianship proceedings. It contends that all MB had to do was comply with the orders "such that the merits had been decided, thereby rendering the two [o]rders final and appealable," and that there is nothing about the orders "that envisions or requires subsequent petitions for approval of the two accounts at issue." Alternatively, MB argues the Final Accounts can be viewed as "standalone claims, independent of the

guardianship proceeding," such that the circuit court's rulings on the Final Accounts "are final [under Rule 303(a)] because there are no other counts remaining in the two Final Accounts." It then discusses the difference between preliminary and permanent injunctive relief to conclude that the circuit court's orders are more akin to permanent injunctive relief—because MB was required to take certain actions—and asserts that "as permanent injunctive relief on standalone causes, and with no other counts pending from the two Final Accounts, [the circuit court's] [o]rders are final and appealable under Rule 303(a)."

¶ 46    MB's jurisdictional theories are convoluted, confusing, and underdeveloped. We start with Rule 303(a), which regulates the time, filing, and transmission of a notice of appeal. For the most part, Rule 303(a) does not address what types of orders are appealable; rather, the rule provides that a notice of appeal must be filed within 30 days of a final judgment or the disposition of the last timely filed postjudgment motion. Ill. S. Ct. R. 303(a)(1). It further provides that a judgment is not final if a Rule 137 claim is pending, which is inapplicable here. Nevertheless, we can infer from MB's argument that intends to invoke Rule 301, which provides that "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). But for this court to have jurisdiction under Rule 301, there must be a final judgment. "A judgment or order is 'final' if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy." *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997).

¶ 47    Here, neither the circuit court's order sustaining some of Silvia's objections nor its order denying MB's motion to reconsider is a final judgment for the purposes of Rule 301. Nothing in either of the circuit court's orders terminated the guardianship case or fixed all the rights of all the parties. Instead, the circuit court determined that MB's accounting was deficient in numerous

respects and ordered MB to not only take certain actions but also to amend its accounting. MB's contention that the circuit court's orders did not "envision[ ] or require[ ] subsequent petitions for approval of the two accounts at issue" fails to appreciate that the circuit court had not approved the Final Accounts; indeed, the circuit court agreed with Silvia that the accounting was incomplete or insufficient.

¶ 48     In sum, we find no legal basis for MB's assertion that Rule 301 and Rule 303(a) provides this court with jurisdiction over MB's appeal.

¶ 49     MB also contends that the circuit court's orders were immediately appealable under Rule 304(b)(1), which provides that "a judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party" is appealable without a written finding. Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). There is no dispute that the circuit court entered orders during guardianship proceedings sustaining some of Silvia's objections and denying MB's motion to reconsider. The question is whether the circuit court's orders finally determined a right or status of a party. We find that the circuit court's orders did not.

¶ 50     Only final orders are appealable under Rule 304(b)(1). *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 84; *Stephen v. Huckaba*, 361 Ill. App. 3d 1047, 1051 (2005). "It is not necessary that the order resolve all matters in the estate, but it must resolve all matters on the particular issue." *Stephen*, 361 Ill. App. 3d at 1051. Final judgments fix the rights of the parties to a lawsuit and dispose of the entire controversy on the merits so that all that is left to do is execute the judgment. *Id.* at 1051-52.

¶ 51     We fail to see how the circuit court's order sustaining numerous objections to the Final Accounts and ordering MB to take certain corrective actions—both in its preparation of the Final Accounts and with respect to certain trust and estate assets—finally determined the right or status

15

of any party. MB asserts that the orders finally determined MB's rights "as to the matters covered by the Final Accounts" because all that was left for it to do was comply with the orders. That is a gross oversimplification. In several instances, the circuit court ordered MB to revise its accounting of certain assets to include greater detail, and in other instances, ordered MB to provide an accounting or inventory of assets that MB failed to account for. MB was also ordered to provide documentation for actions that it purportedly took and to make specific disbursements. MB believes that the circuit court's rulings were incorrect on the merits, but that does not address the threshold question of whether the orders are final and appealable. Nothing about the circuit court's orders suggests finality.

¶ 52    MB does not identify any authority in which Rule 304(b)(1) vested this court with jurisdiction to review what is clearly an interlocutory order on an accounting. MB asserts in its reply brief that "[t]here is no question that the guardianship proceeding itself was not disposed of by Judge Boliker's December 20, 2017[,] Order or the September 17, 2018[,] Order; yet, it is also the case that the two Orders finally determined MB's rights as to the matters covered by the Final Accounts." But MB does not offer any further explanation as to how the orders "finally determined MB's rights." Instructive in this regard are the Committee Comments to Rule 304, which provide examples of final orders for the purposes of Rule 304(b)(1): "an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1998). See also *Cushing*, 2012 IL App (1st) 100768, ¶¶ 83-85 (finding that a combination of orders that resulted in a change to an estate's administrator was appealable under Rule 304(b)(1)). The circuit court's orders at issue here—sustaining objections to an accounting and requiring MB to take corrective actions on numerous issues—bear no resemblance to the types of orders contemplated by Rule 304(b). The circuit

court's orders are plainly interlocutory and did not finally resolve MB rights. The circuit court did not approve or deny MB's accounting, but instead determined that it was incomplete or that additional actions were necessary before the accounts could be approved. MB does not try to show that its accounts amounted to "claims" that were allowed or disallowed, but even if MB made such an effort, we fail to see how the circuit court's rulings on certain objections finally resolved all the objections.

¶ 53    We find that we lack jurisdiction over MB's appeal where the orders appealed from are not final judgments under either Rule 301 or Rule 304(b)(1) and, therefore, dismiss it.

¶ 54                                    III. CONCLUSION

¶ 55    For the foregoing reasons, MB's appeal from the circuit court's December 20, 2017, and September 17, 2018, orders is dismissed for want of jurisdiction.

¶ 56    Appeal dismissed.